*893 OPINION OF THE COURT
Charles J. Tejada, J.
Defendant moves, pursuant to CPL 440.10, to vacate his conviction on the grounds that he was denied his right of confrontation because a tape-recorded 911 telephone caller’s statement was admitted into evidence against the defendant in violation of his Sixth Amendment right of confrontation, as held in Crawford v Washington (541 US 36 [2004]).
The People argue, however, that defendant’s claim is procedurally barred as there is no basis for the Crawford rule to be applied retroactively on collateral review of defendant’s conviction or, in the alternative, that even if the Crawford rule is retroactively applicable on collateral review, the introduction into evidence of the tape-recorded 911 telephone caller’s statement was harmless error beyond a reasonable doubt.
Facts
On July 31, 1995, the complainant, a parking lot attendant on 29th Street and Eighth Avenue in New York County, was robbed. Simultaneously, a person who identified himself or herself as having a last name “Byer,” made a 911 telephone call to report that robbery. The 911 telephone call was received by Police Operator 1521 and recorded on audiotape.
The 911 tape recording gave “Byer’s” account of the robbery as follows:
“operator: Police Operator 1521 Where’s your emergency please?
“caller: Hi . . . Yes ... a robbery ... a robbery in progress here on 27th Street and Eighth Avenue. “operator: What’s being robbed?
“caller: A car ... a car attendant has just been robbed by a guy “operator: A what?
“caller: A car attendant . . . one of those [inaudible] car parks “operator: A car attendant?
“caller: Yeah ... it happened already . . . the guy is gone already “operator: What?
“caller: Just got robbed “operator: You were robbed?
“caller: No . . . not me . . . I’ve seen it and I’m *894 calling to report it.
“operator: But, what was robbed?
“caller: A car attendant . . . from one of the car parks
“operator: Oh, a person in a garage “caller: Yeah ... it happened already “operator: And someone robbed him?
“caller: Yeah . . . the guy is gone already now “operator: Robbed him of what?
“caller: His wallet . . . [inaudible] beat him “operator: What is the address?
“caller: 249 West 29th Street “operator: And what happened?
“caller: Alright . . . the guy walked up to him in the booth and proceeded to beat him and take his wallet. . . and just went at him . . . right here . . . I was just getting a call here on my messages ... so as I seen it I just call you guys up “operator: The perp . . . was he black white or hispanic?
“caller: It’s a black guy and the guy who got robbed was [inaudible]
“operator: What was the man . . . the black man wearing?
“caller: He had on a blue like a polo top . . . blue and white . . . red stripes on it . . . and jeans . . . he’s like about 5’ 6 “operator: What color jeans?
“caller: Blue jeans ... he had on white tennis shoes like
“operator: Do you know the name of the garage? “caller: It’s a park called Park Here Madison Square Garden
“operator: What is your last name?
“caller: [laughter] . . . My last name is Byer . . . B-y-e-r . . . first name is . . . [inaudible] “operator: Do you have a telephone there? “caller: I am on a pay phone “operator: Does it have a number?
“caller: No
“operator: Okay . . . police will be there . . . does *895 the man need an ambulance?
“caller: No ... he just went back into his booth . . . looks like he’s crying “operator: Okay . . . they will be there “caller: Alright.”
In addition to the 911 tape-recorded statement, the evidence against the defendant included the cross-examined testimony of the complainant, corroborative testimony by the arresting officer, the presence of the stolen goods on the defendant, the recovery of defendant’s watch from the scene of the robbery, the in-court identification of the defendant and the immediate identification of the defendant minutes after the robbery.
Discussion
In Crawford v Washington (541 US 36 [2004]), the United States Supreme Court held that the admission of a witness’ tape-recorded “testimonial statement against petitioner [defendant], despite the fact that he had no opportunity to cross-examine . . . alone is sufficient to make out a violation of the Sixth Amendment.” (Crawford, 541 US at 68.) Specifically, the Supreme Court overturned Ohio v Roberts (448 US 56 [1980]), which held that an unavailable witness’ out-of-court statement may be admitted so long as it has “adequate indicia of reliability” — i.e., falls within a “ ‘firmly rooted hearsay exception’ or bears ‘particularized guarantees of trustworthiness’ ” (Crawford, 541 US at 42, quoting Ohio v Roberts, 448 US 56, 66 [1980]) without violating a criminal defendant’s right of confrontation.
In deciding this motion an initial determination is necessary as to whether the tape-recorded 911 telephone caller’s statement is a testimonial statement, within the meaning of Crawford, before turning to the question of whether the Crawford rule applies retroactively to that statement. Given the newness of the Crawford rule, there is no appellate court guidance upon which to rely for the initial determination. Consequently, an analysis based on the Crawford decision alone must be made.
Although Crawford “leave [s] for another day any effort to spell out a comprehensive definition of ‘testimonial’ ” (Crawford, 541 US at 68), it does provide substantial guidance for determining whether the tape-recorded 911 telephone caller’s statement falls within the definition of a testimonial statement, the class of out-of-court statement that, according to Crawford, is the focus of the Confrontation Clause.
*896 Finding that “[t]he constitutional text . . . reflects an especially acute concern with a specific type of out-of-court statement” (Crawford, 541 US at 51), Crawford not only sets forth the parameters of this class of the out-of-court statement, but it also gives examples of two types of statements which fall within the general class of testimonial statements which may be applicable to the 911 tape-recorded statement.
With respect to the general class of testimonial statements, Crawford states that “[t]he text of the Confrontation Clause reflects this focus. It applies to ‘witnesses’ against the accused — in other words, those who ‘bear testimony.’ ” (Id.) Crawford then defines testimony by stating that “ ‘[testimony,’ in turn, is typically ‘[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.’ ” (Id.) Finally, Crawford draws the conclusion that formal accusatory out-of-court statements made to a government officer are testimonial because “[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not.” (Id.)
The 911 call, in this case, contains a solemn declaration for the purpose of establishing the fact that the defendant is committing a robbery. The caller is making a formal out-of-court statement to a government officer for the purpose of establishing this fact. The caller’s statement is not a “casual remark to an acquaintance.” The caller was officially reporting a crime to the government agency entrusted with this very serious and important function. As such, the 911 call falls within the category of out-of-court statements which reflect the focus of the Confrontation Clause; the out-of-court statements of “ ‘witnesses’ against the accused — in other words, those who ‘bear testimony.’ ” (Id.)
Second, further guidance as to whether the 911 call’s content is a testimonial statement is provided in Crawford when we are given various examples of the type of out-of-court statements that fit within the class of testimonial statements. The broad categories of “[v]arious formulations of this core class of ‘testimonial’ statements” are “ex parte in-court testimony or its functional equivalent” and out-of-court “similar pretrial statements.” (Id.) Among *897 these types of pretrial statements, the Supreme Court lists “pretrial statements that declarants would reasonably expect to be used prosecutorially,” and “statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.” (Crawford, 541 US at 51, 52.)
The 911 statement fits, in particular, within the type of statement that was “made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.” (Crawford, 541 US at 52.) With respect to this type of testimonial statement, the test which the Supreme Court prescribes is that of what an “objective witness” would believe under the circumstances in which the statement was made. Viewed from the perspective of an “objective witness,” it is not unreasonable to believe that such a witness reporting a crime to the police would expect that she or he would be called, if necessary, to testify at trial, and that all pretrial information which she or he had given to the police, including a statement within a 911 call, would be available for use at trial. The very act of reporting a crime, that is, making a formal statement to government officers, would lead an objective witness to understand that she or he has become involved in an official police investigation and that her or his formal statement could be used for prosecution, including trial. Moreover, it is also not unreasonable to conclude that the 911 caller, here, was as aware as the witness in Crawford that providing her or his name and being asked for other identifying information, under the circumstances of giving a statement to the police about witnessing a crime, was for the purpose of later involvement as a witness in the prosecution of the perpetrator of that crime, if necessary.
The third reason to conclude that the 911 call should be treated in a similar manner to the testimonial statement at issue in Crawford stems from Crawford’s conclusion that “[whatever else the term covers, it applies at a minimum to . . . police interrogations.” (Crawford, 541 US at 68.)
This type of testimonial statement contains many features which are applicable to the 911 statement. First, as in Crawford, the statement contained in the 911 call was a statement that was given to the police. In Crawford, the statement was obtained by a police officer. In this case, the statement was obtained by “Police Operator 1521.” Given Crawford’s broad statement that testimonial statements include the “functional *898 equivalent” of some of the “[v]arious formulations of this core class of ‘testimonial’ statements” (id. at 51), it follows that a formal statement to a government officer, who is a police operator officially designated to formally obtain these statements, is the functional equivalent of a formal statement to a police officer. Both serve the same functions. They are both statements reporting a crime to the police; they both initiate police and/or prosecutorial action; they are both accusatory statements and they were both admissible as out-of-court statements of nontestifying witnesses pursuant to the now discredited Roberts rule.
Moreover, Crawford does not hold that only statements which are exclusively the product of a police officer’s interrogation are testimonial statements. Instead, Crawford reminds us that historically whether the interrogators were police officers or “other government officers [who] performed the investigative functions now associated primarily with the police” does not change the picture and that even when interrogators are not police officers, “[t]he involvement of government officers in the production of testimonial evidence presents the same risk.” (Crawford, 541 US at 53.)
Additionally, by noting that “[w]e use the term ‘interrogation’ in its colloquial, rather than any technical legal, sense” and that “Q]ust as various definitions of ‘testimonial’ exist, one can imagine various definitions of ‘interrogation’ ” (Crawford, 541 US at 53 n 4), the Supreme Court is referring to interrogation in a very broad and inclusive manner.
Second, the statement was the result of another indicium of a police interrogation: “structured police questioning.” (Crawford, 541 US at 53 n 4.) By asking a series of over 15 questions, the police operator became involved in the production of testimonial evidence, similar to the type of testimonial evidence a police officer would have solicited had the officer interrogated the 911 caller.
Finally, a fourth basis for concluding that the 911 statement is a testimonial statement is the hearsay nature of the statement: that is, the 911 statement was an accusatory testimonial statement received in evidence based on the “firmly rooted hearsay exception,” the present sense impression. Crawford firmly rejects the view that the Confrontation Clause’s “application to out-of-court statements introduced at trial depends upon ‘the law of Evidence for the time being.’ ” (Crawford, 541 US at 50-51.) Instead, the Supreme Court states that “[Heaving the regulation of out-of-court statements *899 to the law of evidence would render the Confrontation Clause powerless to prevent even the most flagrant inquisitorial practices” (Crawford, 541 US at 51), and that “[w]here testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment’s protection to the vagaries of the rules of evidence, much less to amorphous notions of ‘reliability.’ ” (Crawford, 541 US at 61.)
With equal firmness the Supreme Court rejects the legal underpinnings for allowing the introduction of out-of-court testimonial statements without confrontation. Specifically, the “general reliability exception,” which “allows a jury to hear evidence, untested by the adversary process, based on a mere judicial determination of reliability” (Crawford, 541 US at 62), is rejected. Finding that “ [reliability is an amorphous, if not entirely subjective, concept” which “depends heavily on which factors the judge considers and how much weight he accords each of them” (Crawford, 541 US at 63), the Supreme Court concludes that “[dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty.” (Crawford, 541 US at 62.)
We are further instructed by Crawford that although “the [Confrontation] Clause’s ultimate goal is to ensure reliability of evidence, ... it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination.” (Crawford, 541 US at 61.) Consequently, once stripped of its “firmly rooted hearsay exception” or “particularized guarantees of trustworthiness” by the Crawford rule (id. at 60), the 911 statement becomes a rank hearsay statement; a naked accusatory out-of-court testimonial statement; “a statement. . . other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” (Black’s Law Dictionary 726 [7th ed 1999].) Without a hearsay exception, such statement is inadmissible absent confrontation. The very fact that a hearsay exception is necessary for admissibility shows that the statement is testimonial, since hearsay exceptions, when applied to statements, only apply to those that are testimonial; that is, those that contain a “declaration or affirmation made for the purpose of establishing or proving some fact.” (Crawford, 541 US at 51.)
*900 Having determined that the 911 tape-recorded statement is a testimonial statement within the meaning of Crawford, we now turn to the question of whether the admission of this testimonial statement requires defendant’s conviction to be set aside on collateral review. As set forth by the Court of Appeals in People v Eastman (85 NY2d 265 [1995]), determining whether a conviction should be set aside on collateral review requires a two-step analysis. The first step involves a determination as to whether the Crawford rule applies retroactively to the defendant’s conviction. If so, then the second step requires a determination as to whether the introduction of the tape-recorded 911 caller’s testimonial statement was harmless error.
The Court of Appeals, in Eastman, considered the question of a defendant’s collateral attack on his conviction based on an alleged violation of the Sixth Amendment’s Confrontation Clause, as delineated by a new rule issued by the United States Supreme Court. Specifically, the Court of Appeals determined that Cruz v New York (481 US 186 [1987]), which held that the Confrontation Clause bars the introduction of a nontestifying codefendant’s confession that implicates the defendant, applied retroactively to the defendant’s collateral attack on his conviction. In doing so, the Court of Appeals set forth the test for determining whether a new United States Supreme Court rule applies retroactively on collateral review.
Eastman held that when a Supreme Court holding “marks a break from both Federal and State law precedents” and “fundamentally alters the Federal constitutional landscape, the principles of retroactivity developed by the Supreme Court in construing Federal constitutional law govern the disposition of [the] case.” (People v Eastman, 85 NY2d 265, 274-275 [1995].)
Therefore, Eastman states that “[t]he threshold issue in determining whether to apply a constitutional rule retroactively is characterization of the rule as ‘new’ or ‘old’ ” and “that ‘[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced’.” (People v Eastman, 85 NY2d 265, 275 [1995].)
Further, Eastman states that the second exception to the general rule is that “[p]ursuant to Teague, new rules of constitutional criminal procedure are applied retrospectively . . . where the new rule alters a bedrock procedural element of criminal procedure which implicates the fundamental fairness and accuracy of the trial (see, Teague v Lane, 489 US [288], at 311- *901 312)” and that “ ‘[a] case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government; [or,] [t]o put it differently, a case announces a new rule if the result was not dictated by precedent existing at the time the defendant’s conviction became final’ (Teague v Lane, 489 US, at 301, supra).” (People v Eastman, 85 NY2d 265, 275-276 [1995].)
Eastman determined that Cruz “unquestionably departs from established precedent, and implicates a bedrock procedural element — the Sixth Amendment right of confrontation.” (People v Eastman, 85 NY2d 265, 276 [1995].) The Crawford rule is similarly a new rule since it departs from or overrules established precedent found in the Roberts rule and it also involves the same “bedrock procedural element” as in Cruz: the Confrontation Clause.
Moreover, Eastman states that “Cruz declares that when the incriminating confession of a nontestifying codefendant is admitted against the defendant, the procedural apparatus of trial never assured the defendant a fair determination of guilt or innocence . . . .” (People v Eastman, 85 NY2d 265, 276 [1995].)
The same reasoning applies to the Crawford rule. Crawford rejects the previously accepted procedural apparatus used for admission of out-of-court statements of nontestifying witnesses based on judges’ determinations concerning indicia of reliability. This includes the “firmly rooted hearsay exception” of presence sense impression, relied on for the admission of the 911 testimonial statement, since the Supreme Court holds that “the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation.” (Crawford, 541 US at 60, 69.)
Also, in concluding that retroactive application of Cruz is constitutionally commanded on collateral review, Eastman states that “the rule announced in Cruz is central to an accurate determination of guilt or innocence, . . . admission of the codefendant’s inculpatory confession against the defendant undermined the fundamental fairness of the trial, where . . . there was no opportunity for cross-examination to test the reliability of the codefendant’s confession.” (People v Eastman, 85 NY2d 265, 276 [1995].)
This conclusion, with respect to a codefendant’s confession, applies with equal force to the 911 testimonial statement admitted against the defendant with no opportunity for cross- *902 examination to test the reliability of the 911 caller’s inculpatory statement.
Both statements fall within the specific class of out-of-court statements that is the focus of the Confrontation Clause; the “testimonial statement against petitioner [defendant], despite the fact that he had no opportunity to cross-examine . . . [which] alone is sufficient to make out a violation of the Sixth Amendment.” (Crawford, 541 US at 68.)
In the instant case, the defendant was convicted in 1996, eight years before the Supreme Court decision in Crawford v Washington. Ultimately, his case became final when his appeal was denied in 2000. Therefore, as in Eastman, the defendant is collaterally attacking his conviction and seeks the benefit of the second exception to the “general rule” against retroactive application.
The defendant, in this case, is challenging the accuracy of his conviction alleging a violation of his Sixth Amendment right of confrontation as delineated in Crawford. Crawford, in turn, involves a new rule. Similar to the rule announced in Cruz v New York (481 US at 191), the Crawford rule falls within the “new rule” exception mandating retroactivity since it involves the same “bedrock procedural element . . . which implicates the fundamental fairness and accuracy of the trial” (Eastman, 85 NY2d at 275) as in Cruz, the right of confrontation; “[o]ne of the fundamental guarantees of life and liberty” (Kirby v United States, 174 US 47, 55 [1899]; see also Chambers v Mississippi, 410 US 284, 295 [1973] [“The right of cross-examination is more than a desirable rule of trial procedure. It is implicit in the constitutional right of confrontation”]; Pointer v Texas, 380 US 400, 405 [1965] [the right of “cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country’s constitutional goal”]). For the above reasons, the Crawford rule must be applied retroactively on collateral review to the nontestifying 911 witness’ testimonial statement.
Given that this court concludes that the Crawford rule applies retroactively, it follows that the nontestifying 911 witness’ testimonial statement received in evidence against the defendant was in error since the nontestifying witness’ statement was admitted without affording the defendant the opportunity to cross-examine and test the reliability of that statement.
However, the retroactivity of the Crawford rule on collateral review alone is insufficient to require setting aside the *903 defendant’s conviction. Eastman reminds us that the proper standard for review of Confrontation Clause errors is a “harmless error analysis.” (People v Eastman, 85 NY2d 265, 276 [1995]; see, Chapman v California, 386 US 18 [1967].) A harmless error analysis depends on consideration of such factors as “the importance of the witness’ testimony in the prosecution’s case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of crossexamination otherwise permitted, and, of course, the overall strength of the prosecution’s case.” (See, Delaware v Van Arsdall, 475 US 673, 684 [1986]; see also Olden v Kentucky, 488 US 227 [1988]; United States v Towne, 870 F2d 880, 886-887 [2d Cir 1989]; Harper v Kelly, 704 F Supp 375, 379 [SD NY 1989].)
In looking to the entire record and the alleged violation’s “probable impact ... on the minds of an average jury” (People v Eastman, 85 NY2d 265, 276 [1995] [internal quotation marks omitted]), the instant motion must be denied. The introduction of the 911 testimonial statement was a harmless error beyond a reasonable doubt. The evidence properly admitted was sufficient. The defendant’s involvement in the robbery was established by the testimony of witnesses who were confronted and cross-examined. The facts of the robbery and the identification of the defendant as the perpetrator of that crime rested on the in-court testimony of the complainant, whose identification of the defendant was based on having been the victim of the same defendant twice, within a four-day period. The complainant was robbed on July 27, 1994 and again on July 31, 1994 by the defendant. His identification was based not only on this fact, but also on the fact that on both occasions the complainant was in face-to-face contact and struggled with the defendant. That the defendant was correctly identified was further corroborated by the evidence that defendant’s watch was left at the scene of the July 31 robbery during a struggle and testimony that the defendant had identified the watch after the robbery. Moreover, the identification was bolstered by testimony by the arresting police officer that the defendant had a bruise that corroborated the complainant’s version of his struggle with the defendant in an effort to fend off his attacker.
Additionally, the People presented a strong case. The complainant had been robbed twice by the same defendant, within a four-day period; the defendant was identified within minutes of the robbery; he had a bruise consistent with the complainant’s *904 testimony; he was found with the proceeds of the robbery; his watch was left at the scene of the crime; and he was identified in court by the complainant.
On the other hand, the 911 testimonial statement served essentially as background information as to what alerted the police that a crime had been committed. The statement did not support the evidence of guilt. The proceeds of the robbery were recovered from the defendant, not a wallet, the item reported stolen in the 911 statement. Of particular importance is the very nature of the perpetrator’s description in the 911 statement. This description was general as to physical appearance and a little more specific as to clothing. However, the defendant’s arrest photograph did not corroborate this clothing description. Moreover, the People did not rely on the clothing description contained in the 911 statement. Instead, they argued on summation that the defendant, in an effort to alter his appearance, changed his clothing in a “lock-up cell” before the arrest photograph was taken. Identification of the defendant did not rest on the 911 statement’s description of clothing worn by the perpetrator but on the complaining witness’ corporeal identification within minutes of the robbery and in court.
Conclusion
For all the foregoing reasons, the defendant’s motion pursuant to CPL 440.10 is denied.