[824 NE2d 953, 791 NYS2d 513]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v T.J. CHARLES HARDY, Appellant.

Argued January 6, 2005; decided February 17, 2005

## POINTS OF COUNSEL

*Legal Aid Society of Suffolk County, Inc., Appeals Bureau,* Riverhead (*Charles W. Manning* and *Robert C. Mitchell* of counsel), for appellant. I. Appellant's constitutional right to confrontation was violated when the prosecution introduced into evidence, over defense objection, codefendant's plea allocution implicating appellant in the crime. (*People v Thomas,* 68 NY2d 194; *Crawford v Washington,* 541 US 36; *American Trucking Assns. v Smith,* 496 US 167; *Chapman v California,* 386 US 18; *Griffith v Kentucky,* 479 US 314; *People v Martello,* 93 NY2d 645; *Brecht v Abrahamson,* 507 US 619; *People v Eastman,* 85 NY2d 265; *Wray v Johnson,* 202 F3d 515; *Hynes v Coughlin,* 79 F3d 285.) II. Appellant's right to confrontation was violated when the People elicited police testimony, over defense objection, that defendant became a suspect as the result of an out-of-court conversation with an individual who was not a witness at the trial. (*Crawford v Washington,* 541 US 36; *Tennessee v Street,* 471 US 409; *Bruton v United States,* 391 US 123; *Douglas v Al-*

*abama,* 380 US 415; *People v Reynoso,* 309 AD2d 769; *People v Elliott,* 256 AD2d 418; *People v Martinez,* 269 AD2d 608; *People v Milligan,* 309 AD2d 950; *People v Jones,* 280 AD2d 489, 305 AD2d 698; *People v Singleton,* 222 AD2d 719.)

*Thomas J. Spota, District Attorney,* Riverhead (*Glenn Green* of counsel), for respondent. I. Even if the Supreme Court's decision in *Crawford v Washington* (541 US 36 [2004]) were applied to this Court's review of appellant's conviction, any error was harmless. (*Griffith v Kentucky,* 479 US 314; *People v A.S. Goldmen, Inc.,* 9 AD3d 283; *Butler v McKellar,* 494 US 407; *Graham v Collins,* 506 US 461; *O'Dell v Netherland,* 521 US 151; *Yates v Aiken,* 484 US 211; *Teague v Lane,* 489 US 288; *Sawyer v Smith,* 497 US 227; *People v Breazil,* 191 Misc 2d 817; *Hutzenlaub v Portuondo,* 325 F Supp 2d 236.) II. The trial court's evidentiary ruling permitting the introduction of certain background testimony was proper. (*People v Tosca,* 98 NY2d 660; *People v Till,* 87 NY2d 835; *People v Jenkins,* 302 AD2d 247, 100 NY2d 583; *People v Grzebyk,* 253 AD2d 469, 92 NY2d 925; *People v Callegari,* 236 AD2d 551, 89 NY2d 1090; *People v Glass,* 259 AD2d 989, 93 NY2d 924; *People v Wilson,* 226 AD2d 241, 88 NY2d 997; *Crawford v Washington,* 541 US 36; *Tennessee v Street,* 471 US 409; *People v Reynoso,* 2 NY3d 820.)

### OPINION OF THE COURT

CIPARICK, J.

In this appeal, the parties agree that the admission of a nontestifying codefendant's plea allocution was subject to the requirements of the Sixth Amendment's Confrontation Clause as recently articulated by the United States Supreme Court in *Crawford v Washington* (541 US 36 [2004]). We hold that, in light of *Crawford,* the trial court erred in admitting the plea allocution. Moreover, the error was not harmless beyond a reasonable doubt and therefore compels reversal.

### Facts

On November 6, 1998, Jeanne Garcia and her husband, Joseph Garcia, parked their automobile alongside a river on Beaver Dam Road in Suffolk County. While picnicking in their car, two men in a light blue vehicle drove up beside them. One of the men exited the car, approached their vehicle, pointed a shotgun at Mr. Garcia's head and demanded money. The other individual, wearing a mask, approached Mrs. Garcia. He opened her door, grabbed her purse and pulled her from the vehicle.

The unmasked assailant then approached Mrs. Garcia and shot her in the face. The individuals left the scene and Mrs. Garcia ultimately returned to her vehicle. Police and an ambulance arrived and brought Mrs. Garcia to Brookhaven Memorial Hospital for treatment.

A police investigation of the shooting ensued. The police, however, failed to recover any physical evidence from the scene. A single latent fingerprint was recovered from the victims' car. Subsequent analysis revealed that the print matched neither those of the victims nor of defendant. Video surveillance of the area revealed images of a light blue vehicle approach the Garcias and later depart. Mrs. Garcia initially gave a description of her attacker.[1]

A confluence of investigative events ultimately led to defendant's arrest. During the Beaver Dam investigation the police developed information connecting defendant to a local robbery at the home of Bristol and Loretta Francis (the Francis robbery). A 20 gauge shotgun was stolen from the victims' home during this robbery. Additionally, the police connected defendant to the recent theft of a blue Oldsmobile, allegedly stolen a day or two before the Garcia attack. The police found the vehicle abandoned near defendant's home. The gun and blue automobile were similar to those used in the Beaver Dam robbery.

Concomitantly, the police were investigating an unrelated robbery that occurred at a local Coastal gas station (the Coastal station robbery). A 20 gauge shotgun was used in that robbery as well. Defendant's uncle—Vensel Daiquan Hardy—was one of two primary suspects in that robbery. Ultimately, as a result of the Coastal station investigation, the police recovered the 20 gauge shotgun stolen from the Francis home, and matching shotgun shells, from an abandoned white Oldsmobile. After the police recovered the weapon, Detective Pravetz of the Suffolk County Police Department interviewed defendant. Although the police had already recovered the weapon, Detective Pravetz questioned defendant as to the shotgun's whereabouts. Defendant told the officer that his uncle, Vensel, had the weapon.

Finally, nine months after the Beaver Dam shooting, during the course of the investigation of another unrelated local home

1. Her description differed from the defendant's actual appearance. She never identified defendant as one of the attackers, either in court or out of court.

invasion, the police arrested Robert Quarles. Following his arrest Quarles told the police that defendant, along with defendant's brother Janerio Hardy, had committed the Beaver Dam robbery. Quarles told police that defendant admitted that he "shot a lady in the face for $25." Based on all this information, Detective Pravetz arrested defendant and his brother in January 2000 for the Beaver Dam shooting. A Suffolk County grand jury issued multicount indictments against both brothers for crimes stemming from the Beaver Dam incident.

Janerio elected to plead guilty to the robbery. In his plea allocution Janerio stated that he, along with another individual, robbed the Garcias, then retreated to "Daisy's house" and divided the proceeds of the robbery. Defendant, however, proceeded to trial. Mrs. Garcia, testifying at the trial, was unable to identify defendant, but she described the circumstances surrounding the robbery and shooting. Her story matched the account Janerio Hardy gave in his plea allocution. The trial court, over defense counsel's objection, permitted the People to read a redacted version of Janerio's plea allocution into evidence. The People also called Robert Quarles to testify against defendant.[2] Quarles indicated that he knew both defendant and Janerio, as friends. He testified that on November 6, 1998, the day of the Garcia shooting, he encountered both brothers at Daisy's house. According to Quarles, defendant admitted to shooting a lady earlier that day.

In summation, the prosecutor made repeated reference to Janerio's plea allocution. He also noted Quarles' dubious credibility, stating that he "wouldn't be so foolish as to presume that [the jury] might believe Robert Quarles' testimony" without corroboration. The prosecutor argued to the jury that Janerio's plea allocution "corroborates a great many offenses." The prosecutor unequivocally told the jury that the allocution, "along with everything else, pulls it all together."

The jury convicted defendant of attempted murder in the second degree, two counts of robbery in the first degree, two counts of assault in the first degree, and one count of robbery in the second degree. Following sentencing, defendant appealed. On appeal the Appellate Division modified defendant's sentence and otherwise affirmed his conviction (1 AD3d 456 [2003]). A

---

2. Quarles' extensive criminal background was established at defendant's trial. He testified against defendant in exchange for a reduced sentence in a pending matter.

Judge of this Court granted defendant leave to appeal and we now reverse.

## Application of *Crawford*

■ Prior to the United States Supreme Court's decision in *Crawford v Washington* (541 US 36 [2004]), it was well settled that statements against an individual's penal interest, though hearsay, were nevertheless admissible as an exception to the hearsay rule, under certain circumstances. Specifically, in *People v Thomas* (68 NY2d 194, 195 [1986]), we made clear that, "[s]tatements contained in a plea allocution of a codefendant may, in limited circumstances, be received in evidence as a declaration against penal interest to establish an element of the crime charged against defendant." It is now readily apparent, in light of *Crawford*, that *Thomas* no longer controls and must be overruled.

In *Crawford*, the Supreme Court departed from its own former jurisprudence and rejected the test it established in *Ohio v Roberts* (448 US 56 [1980]). The *Roberts* test allowed for the admission of certain statements, not subject to cross-examination, if those statements were found to be otherwise "reliable." The *Crawford* court made clear that *Roberts*' failure "to protect against paradigmatic confrontation violations" compelled its rejection (541 US at 60). Insofar as the *Roberts* test allowed judges to make reliability determinations, it was "fundamentally at odds with the right of confrontation" (*id.* at 61). *Crawford* therefore rejected *Roberts* and its progeny. Because this appeal was not yet final at the time the Supreme Court decided *Crawford*, defendant is entitled to invoke *Crawford*, and we are compelled to apply it (*see Griffith v Kentucky*, 479 US 314, 328 [1987]).[3]

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right "to be confronted with the witnesses against him." This explicit constitutional command makes clear that ex parte testimonial statements are "reliable," and therefore admissible, only when the accused has an opportunity to cross-examine the declarant (*see Crawford*,

---

3. Despite the People's assertion, the record makes clear that defense counsel made a timely and specific objection to the People's use of the plea allocution. Counsel objected and claimed that the admission of Janerio's plea allocution, without being subject to cross-examination, violated defendant's Sixth Amendment rights. The specific and timely objection preserved the issue for our review.

541 US at 59). Indeed, "the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation" (*id.* at 69).

While the *Crawford* court refused to supply a definition of testimonial statements, it described plea allocutions as being "plainly testimonial" in nature (*Crawford*, 541 US at 64). Indeed, there can be little debate over whether a plea allocution of a nontestifying codefendant is "testimonial." Therefore, the trial court's admission of Janerio Hardy's plea allocution constituted a violation of defendant's Sixth Amendment right to confrontation. Indeed, both the People and defendant agree that *Crawford* applies here and that in light of *Crawford*'s application, the trial court erred in admitting the plea allocution statement into evidence. The only dispute between the parties is whether the error was reversible or harmless beyond a reasonable doubt.

### Harmless Error Analysis

Confrontation Clause violations are subject to a constitutional harmless error analysis (*see People v Eastman*, 85 NY2d 265, 276 [1995]). Constitutional error requires reversal unless the error's impact was "harmless beyond a reasonable doubt" (*id.* at 276; *Schneble v Florida*, 405 US 427, 430 [1972]). This determination is based on a review of the "entire record" (*see Eastman*, 85 NY2d at 276). Ultimately, "however overwhelming may be the quantum and nature of other proof, the error is not harmless . . . if 'there is a reasonable possibility that the . . . [error] might have contributed to the conviction' " (*People v Crimmins*, 36 NY2d 230, 240-241 [1975], quoting *Fahy v Connecticut*, 375 US 85, 86 [1963]; *Chapman v California*, 386 US 18, 23 [1967]). A review of the entire record here makes clear that reversal is required.

The only evidence directly inculpating defendant was the testimony of Robert Quarles, who had a long criminal history, regarding defendant's alleged admission. Other than the victims, there were no eyewitnesses to the shooting. Moreover, Mrs. Garcia never identified defendant as her assailant. In fact, her initial description of the assailant conflicted with defendant's actual appearance. It is obvious that Janerio's plea allocution was used precisely to stitch all the evidence together, both direct and circumstantial, in order to secure a conviction, and compel the jury to convict.

The allocution corroborated most of the People's evidence, including the date and chronology of the Beaver Dam shooting.

The redacted allocution submitted to the jury described the robbery in great detail. According to Janerio's recitation, he was wearing a mask when he, along with another individual, robbed an elderly couple on Beaver Dam Road. His account was nearly identical to Mrs. Garcia's description of the robbery. Janerio described grabbing Mrs. Garcia's purse, while the other individual confronted Mr. Garcia. He also claimed that after the robbery he and the other individual retreated to Daisy's house, where they split the money. Similarly, Quarles noted meeting defendant and Janerio at Daisy's house the day of the robbery, where defendant admitted to shooting "a lady in the face for $25."

The prosecutor's own summation illustrates how important the allocution was to the People's case. By the People's own account, Janerio's statements corroborated most of the evidence they presented. The prosecutor expressly informed the jury that the allocution, "along with everything else, pulls it all together." The People's heavy reliance on the allocution creates a reasonable possibility that its admission and subsequent exploitation by the prosecutor contributed to the verdict.

In addition, it is obvious that, despite County Court's instruction indicating that the allocution was to be used solely to establish that the robbery "was committed by two people each aiding the other," the jury relied heavily on it in finding guilt as to all counts. The jury's reliance on the allocution is evidenced by its repeated requests that it be read back along with the testimony of Mr. Quarles and Mrs. Garcia. Consequently, the error was not harmless beyond a reasonable doubt (*see Eastman*, 85 NY2d at 276; *Crimmins*, 36 NY2d at 237).

In light of our determination, we need not reach defendant's other claims.

Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.

Chief Judge KAYE and Judges G.B. SMITH, ROSENBLATT, GRAFFEO, READ and R.S. SMITH concur.

Order reversed, etc.