OPINION OF THE COURT
Dominic R. Massaro, J.
*351 Defendant, Pedro Soto, was convicted by a jury on May 25, 1993 of acting in concert with others in committing the crimes of murder in the second degree (Penal Law § 125.25 [1]), three counts of kidnapping in the first degree (Penal Law § 135.25 [2] [a], [c]; [3]), conspiracy in the second degree (Penal Law § 105.15), and criminal impersonation in the first degree (Penal Law § 190.26). He was thereafter sentenced on July 2, 1993 to concurrent indeterminate terms of imprisonment of from 20 years to life for the murder count, 15 years to life for each of the kidnapping counts, 6 to 12 years for the conspiracy count, and IV2 to 3 years for the criminal impersonation count. Defendant now moves, for a second time, pursuant to Criminal Procedure Law § 440.10, to vacate his judgment of conviction. The motion is denied.
Chronology
Defendant’s conviction arose out of an incident on May 8, 1991, at approximately 10:00 p.m., at the corner of Gun Hill Road and Rochambeau Avenue in Bronx County, in which he and a group of other Hispanic men drove up in two cars and a van, identified themselves as police officers, and then handcuffed and forced George “Pito” Morales into the van. Defendant and his cohorts then brought Mr. Morales to the basement of 2969 Briggs Avenue where they questioned him about the murder of a woman two weeks beforehand. Defendant and his cohorts then beat and tortured Mr. Morales. Afterward, defendant and his cohorts placed Mr. Morales in the furnace, causing him to burn. Although it is not clear if Mr. Morales’ death was caused by defendant and his cohorts’ torture or their placing him in a furnace, it was nevertheless established that the actions of defendant and his cohorts that night caused Mr. Morales’ death.
After defendant’s conviction and sentence, he filed a prior motion to vacate his judgment of conviction pursuant to Criminal Procedure Law § 440.10, which the court denied. The First Department subsequently affirmed defendant’s conviction and the denial of his CPL 440.10 motion. (See People v Soto, 253 AD2d 359 [1st Dept 1998], lv denied 92 NY2d 1039 [1998].)
On May 8, 2002, the United States District Court for the Southern District of New York dismissed defendant’s petition for a writ of habeas corpus and declined to issue a certificate of appealability. (See Soto v Artuz, 78 Fed Appx 760 [2d Cir 2003], cert denied sub nom. Soto v Phillips, 541 US 945 [2004].) Although the Second Circuit granted the certificate of appeal- *352 ability, it too found defendant’s claim without merit and affirmed the District Court’s holding. (See id.)
Defendant’s Motion
In his present motion, defendant claims that his Sixth Amendment Confrontation Clause rights were violated (see Crawford v Washington, 541 US 36 [2004]), because, at trial, the videotaped confession of his separately tried codefendant, Victor Garcia, and the prior testimonial statement of one Marilyn Mayo were allegedly introduced at trial against him even though Mr. Garcia and Ms. Mayo did not testify themselves.
Discussion
After an exhaustive review of the trial record in this matter, neither a videotaped confession of Mr. Garcia nor a prior testimonial statement of Ms. Mayo were ever introduced against defendant. Therefore, defendant’s motion to vacate his judgment of conviction on these grounds is denied pursuant to CPL 440.30 (4) (c) and (d), as it is conclusively refuted/contradicted by the trial transcript and there is no reasonable possibility that this allegation is true.
However, the following testimony was given by a police detective regarding Mr. Garcia:
“asst. dist. atty.: Detective, at any time during — did you take pedigree information from Mr. Garcia?
“det. landesberg: Yes.
“asst. dist. atty.: Do you recall what his occupation was?
“det. landesberg: He was the super of 2969 Briggs Avenue” (transcript at 247).
Before determining whether pedigree information is considered testimonial pursuant to the Crawford rubric (supra), it must first be determined whether this is an issue to be addressed on CPL 440.10 collateral review after direct appeals have been exhausted. In Mungo v Duncan (393 F3d 327 [2d Cir 2004]), the Second Circuit joined the Tenth and Eighth Circuits (see Brown v Uphoff, 381 F3d 1219 [10th Cir 2004], cert denied sub nom. Brown v Lampert, — US —, 125 S Ct 940 [2005]; Evans v Luebbers, 371 F3d 438 [8th Cir 2004], cert denied sub nom. Evans v Roper, — US —, 125 S Ct 902 [2005]; cf. Bockting v Bayer, 399 F3d 1010 [9th Cir 2005]) in holding that, pursuant to Teague v Lane (489 US 288 [1989]), Crawford (supra) was not applicable on collateral review of convictions that became *353 final before that decision was rendered because although it was a new rule of criminal procedure, it was not a watershed rule necessary to the fundamental fairness of the criminal proceeding and did not improve the overall accuracy of the criminal process. (See also People v Khan, 4 Misc 3d 1003[A], 2004 NY Slip Op 50644[U] [Sup Ct, Queens County 2004]; cf. People v Dobbin, 6 Misc 3d 892 [Sup Ct, NY County 2004]; People v Watson, 5 Misc 3d 1013[A], 2004 NY Slip Op 51364[U] [Sup Ct, NY County 2004] [both of which applied Crawford (supra) retroactively on collateral appeal].)
Despite this holding by the Second Circuit, it is well settled that although this court is
“bound by the United States Supreme Court’s [and New York State Court of Appeals’] interpretations of Federal statutes and the Federal Constitution . . . the interpretation of a Federal constitutional question by the lower Federal courts . . . serve [s] [only] as useful and persuasive authority for [New York state courts] while not binding [them]. . . . [Rather, the New York state courts] in [their] longstanding tradition and independent responsibility [have] exercised [their] correlative adjudicative power on questions of Federal law.” (People v Kin Kan, 78 NY2d 54, 59-60 [1991], citing New York R.T. Corp. v City of New York, 275 NY 258, 265 [1937] [“argument. . . rejected in the Federal courts . . . , while entitled to great weight, is not binding on (the New York State courts)”], affd 303 US 573 [1938]; see also Matter of Mason, 100 NY2d 56 [2003]; People v West, 12 AD3d 152 [1st Dept 2004]; People v Rivera, 237 AD2d 178 [1st Dept 1997], lv denied 90 NY2d 863 [1997], lv denied 91 NY2d 836 [1997].)
The guiding Court of Appeals case regarding whether to apply new United States Supreme Court cases about Sixth Amendment Confrontation Clause issues retroactively is People v Eastman (85 NY2d 265 [1995]). However, Eastman (supra), like Mungo (supra), is merely an application of Teague (supra), and the court finds the following reasoning from Mungo (supra at 335-336) to be especially useful and persuasive:
“Crawford . . . precludes admission of highly reliable testimonial out-of-court statements that would have been admissible under the old rules. In such instances, juries will be deprived of highly reliable evidence of guilt, and cases that otherwise would *354 have resulted in well-deserved convictions will now result in acquittals or hung juries. We recognize that Crawford’s rule derives from the principle that cross-examination is a better engine of truth-determination than a judge’s assessment of the reliability of uncross-examined hearsay. Crawford, 124 S.Ct. at 1370. We do not question this principle. But it does not necessarily follow that the Crawford rule will improve the accuracy of the process. . . . Where the testimony was admissible under the old rules precisely because it was reliable, these applications of Crawford will diminish, rather than increase, the accuracy of the process.
“In short, the advent of the Crawford rule brings about substantial changes in the protection given by the Confrontation Clause to an accused from receipt of uncross-examined statements. In some instances those changes will likely improve the accuracy of the factfinding process; in others they will likely impair the accuracy of the factfinding process. Because Teague’s test of a watershed rule requires improvement in the accuracy of the trial process overall, we conclude that Crawford is not a watershed rule. We thus conclude that Crawford should not be applied retroactively on collateral review.”
As such, the court agrees and holds that Crawford (supra) is not applicable on collateral review.*
In any event, the court finds that the pedigree information at issue in this case is not testimonial in nature, in that it was not “[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact,” nor a statement that was “made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.” (Crawford, supra at 51-52; see also *355 Mungo, supra at 336 n 9 [“Although the word ‘interrogation’ can include any asking of questions, the first meaning listed (for ‘interrogate’) in Webster’s Third New International Dictionary is ‘to question typically with formality, command, and thoroughness for full information and circumstantial detail.’ Webster’s Third New International Dictionary 1182 (1976). We believe the Supreme Court intended this more limited meaning, which is more consistent with the other types of testimonial statements the Court mentioned”]; People v Coleman, 16 AD3d 254, 254 [1st Dept 2005] [“Crawford repeatedly stresses the element of formality and reiterates that the Confrontation Clause was primarily directed at evidence bearing a resemblance to depositions and affidavits, even if unsworn”].)
This case is similar to People v Newland (6 AD3d 330 [1st Dept 2004], lv denied 3 NY3d 679 [2004], lv denied 3 NY3d 759 [2004]) in that “[e]ven assuming that this testimony conveyed an implicit assertion by a nontestifying declarant, it was not received for its truth, but as background evidence to complete the narrative of events . . . [and] the Confrontation Clause ‘does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted’ ” (id. at 330-331, quoting Crawford, supra at 59 n 9).
Nonetheless, even if this information was considered testimonial in nature pursuant to Crawford (supra), its admission was harmless beyond a reasonable doubt. (See People v Douglas, 4 NY3d 777 [2005]; People v Hardy, 4 NY3d 192 [2005]; People v Norcott, 15 AD3d 14 [1st Dept 2004]; People v A.S. Goldmen, Inc., 9 AD3d 283 [1st Dept 2004], lv denied 3 NY3d 703 [2004], lv denied 3 NY3d 709 [2004], lv denied 3 NY3d 712 [2004].)
Ordered that defendant’s motion to vacate his judgment of conviction is denied.

 Although the Third Department recently held that Crawford (supra) “applies retroactively to all cases, state or federal, pending on direct review or not yet final” (People v Ryan, 17 AD3d 1, 3 n 1 [3d Dept 2005] [internal quotation marks omitted]), it is inapplicable to the case at bar as direct review ceased when leave was denied on December 7, 1998, and the case became final on March 7,1999. (See Griffith v Kentucky, 479 US 314, 321 n 6 [1987] [“ ‘(F)inal’ . . . mean(s) a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed,” which, pursuant to United States Supreme Court Rule 13 (1), is 90 days after leave is denied “or a petition for certiorari finally denied”], citing Linkletter v Walker, 381 US 618, 622 n 5 [1965].)