OPINION OF THE COURT
Marcy L. Kahn, J.
By notice of motion dated September 5, 2006, defendant Charles Watson has moved pursuant to Criminal Procedure Law § 440.10 (1) (h) to vacate the judgment of conviction entered against him under indictment No. 7715/90. On November 17, 2006, the People submitted their response in opposition to the motion. On December 22, 2006, this court orally denied the motion. This written decision explains that ruling.
I. Factual and Procedural Background
A. Procedural History of the Case
Defendant was convicted of robbery in the first and second degrees (Penal Law §§ 160.15, 160.10), and criminal possession of a weapon in the second and third degrees (Penal Law § 265.02 [4]; § 265.03 [2]), in connection with a gunpoint robbery of a Burger King restaurant in Lower Manhattan. On January 16, 1992, he was sentenced to a total of 12V2 to 25 years, to run consecutively to a federal sentence for bank robbery. The judgment of conviction was unanimously affirmed by the Appellate Division, First Department, and leave to appeal to the Court of Appeals was denied. (People v Watson, 205 AD2d 398 [1st Dept 1994], lv denied 84 NY2d 834 [1994].)
*944 In 2004, defendant filed a CPL 440.10 (1) (h) motion with the Supreme Court, New York County,[1] to vacate the conviction (Watson I). On May 10, 2004, this court denied the motion. Just prior to the decision being rendered, however, defendant filed an amended motion in which he alleged that his conviction had been obtained in violation of principles announced in Crawford v Washington (541 US 36 [2004]), which had been decided during the pendency of his motion in Watson I. On November 4, 2004, after assignment of counsel and further briefing, this court, in a subsequent decision, held that Crawford applied retroactively on the collateral review of defendant’s conviction, but ruled that to the extent that the admission of testimony at his trial violated his Sixth Amendment right of confrontation, the error was harmless, given the overwhelming proof of defendant’s guilt. (People v Watson, 5 Misc 3d 1013[A], 2004 NY Slip Op 51364[U] [2004] [Watson II].)
On the present motion, defendant again moves to vacate the judgment, as well as this court’s decision in Watson II, on the grounds that the Supreme Court’s recent ruling in Davis v Washington (547 US —, 126 S Ct 2266 [2006]) establishes additional violations of his Sixth Amendment right to confrontation, and that the errors were not harmless.
B. The Watson II Decision
The facts underlying defendant’s conviction are fully detailed in Watson II, and familiarity with that decision is presumed. In sum, at defendant’s trial three statements by a witness named Blair Alexander, who did not testify, were admitted into evidence. The first statement occurred very shortly after the robbery when Alexander, who was bleeding profusely from the head, emerged from the Burger King restaurant and told a police officer who had happened on the scene, and had just taken defendant into custody moments before, that defendant “just robbed me. He just robbed us at Burger King.” The second statement was elicited moments afterward when the officer, George Loydgren, asked Alexander whether any other perpetrators had been involved, and Alexander responded that defendant had acted alone. The third statement occurred approximately two minutes later, when the officer asked Alexander to tell him what had happened, and Alexander responded with a narrative of the events surrounding the robbery.
*945 Defendant’s earlier amended motion was based upon the trial court’s admission of those statements, all of which defendant alleged to be testimonial statements made in response to police interrogation, and all of which he claimed were introduced at his trial in violation of Crawford’s proscription against introduction at trial of the testimonial statement of a witness in the absence of the unavailability of the witness and a prior opportunity of the defendant to have cross-examined him or her. (See Crawford, supra, 541 US at 68.) In Watson II, this court, as a threshold matter, examined the retroactivity rules established by the United State Supreme Court in Teague v Lane (489 US 288 [1989]), and in the Court’s prior and subsequent jurisprudence on that subject, as well as the decision of the New York Court of Appeals in People v Eastman (85 NY2d 265 [1995]), and agreed with defendant’s contention that this court was required to apply Crawford to defendant’s case on collateral review, notwithstanding the finality of his case on direct appeal at the time Crawford was decided. (See Watson II, supra.) Addressing the merits, I found Alexander’s first two statements to Officer Loydgren to have been nontestimonial, and therefore admissible. I concluded that Crawford barred admission of Alexander’s third statement, which was testimonial, and which had been separated from the second statement by two minutes and had occurred after defendant had been handcuffed and the surrounding area secured. Applying Eastman, however, I found the error harmless due to the overwhelming evidence implicating defendant, and denied the motion to vacate the judgment under CPL 440.10. (Watson II.)
II. Contentions of the Parties
A. Defendant’s Claims
On this motion defendant argues once again that his conviction was obtained in violation of his constitutional right to confront witnesses guaranteed under the Sixth Amendment to the United States Constitution as articulated by the Supreme Court in Crawford. He further argues that the Court’s recent decision in Davis v Washington (547 US —, 126 S Ct 2266 [2006]), clarifying its earlier Sixth Amendment ruling in Crawford, has overruled this court’s decision in Watson II. Defendant contends that Davis now establishes that the admission into evidence of Alexander’s first two statements violated his right to confront the witness, and that the admission of all three of his statements was not harmless error. Defendant also argues that the trial court’s improper admission of the third statement in *946 itself was not harmless error, as found by this court in Watson II.
B. The People’s Response
In opposition, the People reiterate their argument advanced unsuccessfully before this court in Watson II that Crawford is not applicable retroactively to cases on collateral review which were final at the time the Supreme Court decided Crawford. They contend that the Second Circuit’s decision in Mungo v Duncan (393 F3d 327 [2d Cir 2004], cert denied sub nom. Mungo v Greene, 544 US 1002 [2005]), issued after this court’s decision in Watson II, provides persuasive authority that Crawford should not be given retroactive application on the ground that, under Teague v Lane (489 US 288 [1989]), the Crawford rule did not implicate the “fundamental fairness” of the criminal process.
The People alternatively argue that should this court consider defendant’s motion on the merits, it should deny it. The People note that Davis distinguishes between two types of statements received during the course of police investigations, “ ‘[Responding’ statements [which] are not testimonial” and “ ‘ [investigating’ statements [which] are testimonial.” (Affirmation of Allen J. Frazer, Esq., Nov. 17, 2006, in response to defendant’s motion to vacate judgment, at 8 [People’s CPL 440.10 response].) This distinction, they aver, establishes that statements taken by a police officer in responding to a crime scene and attempting to address an ongoing emergency are not generally testimonial, while statements taken by the police in investigating a past crime in order to secure evidence are generally testimonial.
The People maintain that this court’s ruling in Watson II as to Blair Alexander’s first two statements was consistent with Davis. They further argue that Davis makes clear that the third set of statements was properly admitted under Crawford, as it lacked sufficient formality to establish that the statements were testimonial. Accordingly, the People argue, Davis demonstrates that, in fact, the trial court did not err in admitting the third set of statements. In any event, they say, this court should adhere to its initial ruling in Watson II that the admission of those statements, even if unconstitutional, constituted harmless error, as the evidence of defendant’s guilt was overwhelming.
III. Applicable Law
A. Crawford v Washington
The Confrontation Clause of the Sixth Amendment to the Federal Constitution provides: “In all criminal prosecutions, the *947 accused shall enjoy the right . . . to be confronted with the witnesses against him.” (US Const Amend VI.) In Crawford v Washington (541 US 36, 53-54 [2004]), the Supreme Court held that the clause bars “admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.” “Where testimonial statements are at issue,” the Court announced, “the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation.” (Id. at 68-69.) In doing so, the Supreme Court overruled[2] its previous standard for assessing Confrontation Clause compliance in Ohio v Roberts (448 US 56, 66 [1980]), which had conditioned the admissibility of all hearsay evidence on whether it either fell within a “firmly rooted hearsay exception” or bore “particularized guarantees of trustworthiness. ’ ’
The Court’s opinion in Crawford did not, however, define the term “testimonial” (Crawford v Washington, 541 US at 68; see Watson II), nor say whether it was limiting the scope of the Confrontation Clause to such statements. In offering examples of testimonial statements, the Court cited “police interrogations” as being, “at a minimum,” included within its definition. (Crawford at 68.) The Court similarly did not expound on what it meant by “police interrogations,” other than to advise that it “use[d] the term ‘interrogation’ in its colloquial, rather than any technical legal, sense. . . . and [found that it] need not select among [the various possible definitions of ‘interrogation’]” in deciding Crawford (id. at 53 n 4). The Court added, however, that in the case before it, the “record'd statement, knowingly given in response to structured police questioning, qualifie[d] under any conceivable definition.” (Id.)
B. Davis v Washington
In Davis v Washington (supra), and its companion case, Hammon v Indiana, the Supreme Court had occasion to fill in some *948 of the lacunae of its new Sixth Amendment Confrontation Clause jurisprudence pertaining to testimonial statements given in response to police interrogation under Crawford. Davis and Hammon both concerned reports to police by victims of domestic violence.
In the Davis cases, the Supreme Court first made clear that the protections of the Confrontation Clause pertained only to testimonial hearsay. (Davis v Washington, 547 US at —, 126 S Ct at 2274.) The Court (547 US at —, 126 S Ct at 2273-2274) then announced (at least for the purposes of the cases then before it) the following test for determining whether a statement obtained during police interrogation is “testimonial”:
“Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution” (emphasis added).
The Court added that Confrontation Clause analysis examines the declarant’s statements, not the interrogator’s questions, in its application of this “primary purpose” test (547 US at — n 1, 126 S Ct at 2274 n 1).
In Hammon, involving an on-the-scene police investigation, officers had responded to a residence in response to a reported domestic disturbance. On arrival, they were told by both spouses that things were fine and no emergency existed. The police placed the parties in different rooms for questioning. Each spouse then provided statements concerning events surrounding a dispute which had occurred earlier that day, with Mrs. Hammon being questioned a second time, and thereafter, executing an affidavit to recount those events. (547 US at —, 126 S Ct at 2278-2279.)
The Supreme Court first determined that the statements thus elicited from Mrs. Hammon were testimonial in nature. Applying its newly announced primary purpose test, the Court held that the statements were made in response to “an investigation into possibly criminal past conduct. . . . There was no emergency in progresst,]” and the officer who had recounted the statement testified that there were no signs of an ongoing threat *949 from the time he arrived at the scene. (547 US at —, 126 S Ct at 2278.) Although the statements had been made at the scene, they “were neither a cry for help nor the provision of information enabling officers immediately to end a threatening situation.” (547 US at —, 126 S Ct at 2279.) “Objectively viewed, the primary, if not indeed the sole, purpose of the interrogation was to investigate a possible crime.” (547 US at —, 126 S Ct at 2278.)
Although the statements in Hammon were less formal than those at issue in Crawford, which had been tape-recorded at the station house after Miranda warnings (id.), the Court found sufficient formality in the statements due to the separation of the parties for questioning, the fact that the statements responded to police questioning by deliberately recounting the sequence of past, potentially criminal events, and the fact that the statements were followed immediately by the swearing out of an affidavit. (Id.) The Court concluded that “[s]uch statements under official interrogation are an obvious substitute for live testimony, because they do precisely what a witness does on direct examination; they are inherently testimonial.” (547 US at —, 126 S Ct at 2278.)
The Court distinguished Hammon’s statements from the report of a domestic disturbance while it was ongoing given to a police 911 operator in the companion case of Davis. In Davis, the Court observed, the declarant-victim had been “facing an ongoing emergency” and her call to 911 was plainly a cry for help in the face of a then-present physical threat. (547 US at —, 126 S Ct at 2276.) Viewed objectively, the questions asked and the answers given “were necessary to be able to resolve the present emergency, rather than simply to learn (as in Crawford) what had happened in the past.” (547 US at —, 126 S Ct at 2276.) Finally, the declarant in Davis was not calmly responding to questions in a quiet environment, but was frantically communicating about a continuing danger. (547 US at —, 126 S Ct at 2277.) These facts, the Court held, indicated that the primary purpose of the interrogation in Davis, when viewed objectively, was to describe current circumstances to enable police to meet an ongoing emergency. The declarant had neither acted as a witness, nor given testimony in making the statement. (Id.)
IV Discussion
A. Retroactivity of Crawford
Although Davis sheds no light on the subject, and notwithstanding my determination of the question in Watson II, this motion again raises, as a threshold issue, the applicability of *950 Crawford on collateral review of cases which were final for direct appellate review purposes at the time the Supreme Court announced its decision in Crawford.
1. The Watson II Ruling
In Watson II, this court closely examined the issue of retroactivity of new rules of constitutional law under both the federal and state common-law standards and held that retroactive application of Crawford was compelled. (See Watson II.) The reader is referred to that discussion for my analysis, which will not be repeated here. In summary, following the Supreme Court’s retroactivity rules announced in Teague v Lane (489 US 288 [1989]), and the Court’s subsequent refinements of them, as well as the pronouncements of New York Court of Appeals in People v Eastman (supra), I concluded that:
(1) Watson’s case had become “final” for direct review purposes well before the Crawford decision was rendered;
(2) Crawford established a “new” rule of constitutional criminal procedure;
(3) Crawford announced a “watershed” rule of criminal procedure which was “implicit in the concept of ordered liberty” (Teague, supra at 311), bringing its holding within the second exception to Teague's general preclusion of retroactive application of new procedural rules on collateral review, because the new rule:
(A) alters our understanding of “a bedrock procedural element of criminal procedure” (Eastman, 85 NY2d at 275, citing Teague, supra at 311-312, citing Mackey v United States, 401 US 667, 693 [1971, Harlan, J., concurring in part and dissenting in part]);
(B) “implicates the fundamental fairness and accuracy of the trial” (id.); and
(C) is a rule of procedure “without which the likelihood of an accurate conviction is seriously diminished” (Teague, supra, 489 US at 313; see Schriro v Summerlin, 542 US 348, 351-352 [2004]), or, as stated in Watson II (5 Misc 3d 1013[A], 2004 NY Slip Op 51364[U], *5), “[is] central to an accurate determination of guilt or innocence” (quoting Eastman, supra at 276).
Thus, I held that under Teague and under Eastman, defendant was entitled to retroactive application of Crawford on his second CPL 440.10 motion.
2. The People’s Argument and Developments Since Watson II
The People note that subsequent to this court’s decision in Watson II, all but one of the United States Circuit Courts of *951 Appeals which have considered the issue have declined to apply Crawford retroactively on collateral review under Teague and subsequent decisions. (People’s CPL 440.10 response at 4-5, citing Espy v Massac, 443 F3d 1362 [11th Cir 2006]; Murillo v Frank, 402 F3d 786, 790-791 [7th Cir 2005]; Dorchy v Jones, 398 F3d 783, 788 [6th Cir 2005]; McGonagle v United States, 137 Fed Appx 373 [1st Cir 2005, per curiam]; Brown v Uphoff, 381 F3d 1219 [10th Cir 2004]; Evans v Luebbers, 371 F3d 438, 444-445 [8th Cir 2004, en banc] [all concluding or suggesting that the rule in Crawford should not be applied retroactively]; but see Bockting v Bayer, 399 F3d 1010 [9th Cir 2005], cert granted sub nom. Whorton v Bockting, 547 US —, 126 S Ct 2017 [2006] [argued Nov. 1, 2006] [holding that Crawford must be applied retroactively on collateral review].)
The People rely particularly on the decision of the Second Circuit in Mungo v Duncan (393 F3d 327 [2d Cir 2004]), decided after this court’s decision in Watson II, to urge that this court reconsider its earlier ruling on this point and hold that Crawford is not retroactively applicable to cases on collateral review. In Mungo, the Second Circuit rejected the claim that the new rule of Crawford satisfied Teague's requirement that it be a “watershed rule” of criminal procedure necessary to the fundamental fairness of the criminal proceeding and which improves the accuracy of the criminal process (Teague, supra at 311). As the court saw the Crawford rule, “it is likely to improve accuracy in some instances and diminish it in others.” (Mungo v Duncan, supra, 393 F3d at 335.) The court observed that Crawford's protection against un-cross-examined statements would effect major changes in the application of the Confrontation Clause. It then concluded:
“In some instances those changes will likely improve the accuracy of the factfinding process; in others they will likely impair the accuracy of the factfinding process. Because Teague's test of a watershed rule requires improvement in the accuracy of the trial process overall, we conclude that Crawford is not a watershed rule. We thus conclude that Crawford should not be applied retroactively on collateral review.” (Id. at 336.)
Although not emphasized by the People, subsequent to this court’s decision in Watson II, several courts of coordinate jurisdiction in New York have reached differing conclusions on whether Crawford is to be applied retroactively on collateral *952 review under Teague and People v Eastman (supra). (Compare People v Jackson, 12 Misc 3d 1178[A], 2006 NY Slip Op 51299[U] [Sup Ct, Queens County 2006]; People v Ayrhart, 8 Misc 3d 1014[A], 2005 NY Slip Op 51100[U] [Niagara County Ct 2005]; People v Soto, 8 Misc 3d 350 [Sup Ct, Bronx County 2005]; People v Vasquez, 7 Misc 3d 762 [Sup Ct, NY County 2005] [all following Mungo and finding no retroactivity], with People v Encarnacion, 6 Misc 3d 1027[A], 2005 NY Slip Op 50203[U] [Sup Ct, NY County 2005] [disagreeing with Mungo], and People v Dobbin, 6 Misc 3d 892 [Sup Ct, NY County 2004] [both finding retroactivity].)
Defendant has not addressed the retroactivity issue on this motion.[3]
At this writing, a decision by the Supreme Court in Bockting is expected this term. There has been no determination of the issue by any appellate court in New York.
3. Analysis
Having considered the arguments advanced by the People, and the many scholarly opinions of the lower federal and New York state courts on the issue, I continue to adhere to the views I expressed at length in Watson II, and continue to believe that Crawford is one of the exceedingly few new rules of constitutional criminal procedure (see Schriro v Summerlin, 542 US 348 [2004]; Beard v Banks, 542 US 406 [2004]) which, under the procedural rules of Teague and Eastman, must be applied retroactively to cases which have already become final. My reasoning, in addition to that previously stated, follows.
The principal argument advanced by the People in support of the notion that Crawford is not a watershed rule under the second Teague exception[4] is, as held in Mungo, that Crawford’s requirement of cross-examination of any witness whose testimonial statement is received at trial does not, in every case, improve the accuracy of the verdict. Adding a requirement of cross-examination, it is argued, may sometimes result in the exclusion of reliable evidence, thereby diminishing the accuracy of the verdict. (Mungo v Duncan, supra, 393 F3d at 335-336.) *953 Because Crawford is therefore not a rule of procedure “without which the likelihood of an accurate conviction is seriously diminished” in all cases, the argument continues, it cannot be watershed.
Reliance on such reasoning, however, overlooks the fact that the Supreme Court has consistently, in its jurisprudence, held that the purpose of the Confrontation Clause is to promote accuracy. (Bockting v Bayer, supra, 399 F3d at 1017-1018, and cases there cited; Watson II, supra, and cases there cited; see, e.g., Tennessee v Street, 471 US 409, 415 [1985] [mission of the Confrontation Clause is “to advance ‘the accuracy of the truth-determining process in criminal trials’ ”]; White v Illinois, 502 US 346, 356 [1992] [cross-examination is “the greatest legal engine ever invented for the discovery of truth”], quoting California v Green, 399 US 149, 158 [1970].)
In Crawford itself the Court gave voice, repeatedly, to the unique, and essential, role that cross-examination plays in the fact-finding process. The Court acknowledged the realization since the time of the framers of the Constitution that “[n]othing can be more essential than the cross examining [of] witnesses, and generally before the triers of the facts in question.” (Crawford v Washington, supra, 541 US at 49.) Offering its own perspective on the role of cross-examination in assuring reliability today, the Court explained:
“Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment’s protection to the vagaries of the rules of evidence, much less to amorphous notions of ‘reliability.’ . . . Admitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation. To be sure, the Clause’s ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. The Clause thus reflects a judgment, not only about the desirability of rehable evidence . . . , but about how reliability can best be determined.” (Crawford v Washington, supra, 541 US at 61 [citations omitted].)
In concluding its opinion, the Court left no doubt as to the value of cross-examination in assuring the reliability, and hence the accuracy, of evidence: “Where testimonial statements are at *954 issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation.” (Id. at 68-69.)
As the Ninth Circuit explained in Bockting (supra), the flaw in the Mungo court’s analysis is that the Second Circuit (along with those courts which have adopted its reasoning) has substituted its own judgment on whether the Crawford rule enhances the accuracy of convictions for that of the Supreme Court. (Bockting v Bayer, supra, 399 F3d at 1020.) The Supreme Court, it notes, has repeatedly determined that the purpose of the Confrontation Clause is to promote accuracy, and, as the Crawford court has said in the passages quoted above, the only means by which reliability can constitutionally be assured is through the use of cross-examination. Viewing those holdings together with the Crawford court’s vehement rejection of Ohio v Roberts’ unpredictable, unreliable, case-by-case approach to enforcement of Sixth Amendment confrontation rights as a “fundamental failure” (Crawford, supra, 541 US at 67), the Ninth Circuit in Bockting concluded that “the Crawford rule is one without which the likelihood of accurate conviction is seriously diminished.” (Bockting v Bayer, supra, 399 F3d at 1021.) This reasoning, supported as it is by the Supreme Court’s own pronouncements in Crawford and other cases, is more persuasive to this court than that of the Second Circuit in Mungo.
To put the matter otherwise, in the words of a court of coordinate jurisdiction, the Court in Crawford has determined that a testimonial hearsay statement is “presumptively unreliable.” (People v Encarnacion, 6 Misc 3d 1027[A], 2005 NY Slip Op 50203[U], *7, supra.) The Mungo court’s contention that Crawford does not always improve the reliability of the trial process plainly ignores this underpinning of Crawford. As the Encarnación court’s thoughtful examination of the issue noted, applying Mungo’s reasoning would have brought about a totally different result in Eastman, which held that the rule of Cruz v New York (481 US 186 [1987]) should be retroactively applied on collateral review, applying the Teague criteria. Since the interlocking confessions of nontestifying codefendants which were banned in Cruz would sometimes be reliable, under Mungo’s reasoning, Cruz would not be seen as sufficiently improving the overall accuracy of the trial process to warrant according it watershed status. Because Mungo misapprehends, or contradicts, the retroactivity jurisprudence of the New York Court of Appeals in Eastman, I must reject its reasoning and follow the decisional *955 law of the State Court of Appeals in Eastman. (People v Brown, 235 AD2d 344 [1st Dept 1997].)
Another argument advanced against according the Crawford rule watershed status is that it cannot satisfy the recent articulation in Schriro of the accuracy requirement of Teague’s second exception’s accuracy requirement, that the absence of cross-examination so seriously diminishes the accuracy of the process that there is an impermissibly large risk of punishing the innocent. (See, e.g., People v Vasquez, supra, 7 Misc 3d at 782, citing Schriro v Summerlin, supra, 542 US 348, 356 [2004], citing Teague, 489 US at 312-313.)
In Vasquez, another court of coordinate jurisdiction, in a most scholarly review of the issue, concluded that the retroactivity of Crawford must depend on the answer to the following question regarding its role in promoting the accuracy of the trial process, namely: whether a judicial determination conducted pursuant to Roberts so seriously diminished accuracy that it constituted an impermissibly large risk that an innocent person would be convicted. (Vasquez, supra, 7 Misc 3d at 785.) Examining its own careful and searching inquiry which had been conducted at the trial pursuant to Roberts prior to permitting introduction of a codefendant’s plea allocution as a declaration against penal interest (id. at 766-768), the Vasquez court concluded that the likelihood of an accurate conviction in that case had not been seriously diminished by the failure to employ Crawford’s requirement of cross-examination. Finding the decisions according retroactivity not to have engaged in such an analysis, the court there concluded that Crawford was not to be applied retroactively to cases already final on direct review. (Id. at 789-790 [“The Roberts rule required judicial engagement in a careful analysis to safeguard the accuracy of the verdict, a procedural apparatus not considered in the Cruz or Eastman rulings. Nor was the impact of that procedure on the likelihood of an accurate conviction discussed in Watson (II) or Dobbin, in determining the issue of retroactivity”].)
The first problem with this approach is that it ignores the holding of Crawford that it is the guarantee of confrontation through cross-examination that is “the only indicium of reliability sufficient to satisfy constitutional demands” (Crawford, supra at 68-69), and that the Confrontation Clause “commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination.” (Id. at 61.) As the New York Court of Appeals *956 has explained, the “explicit constitutional command” of the Confrontation Clause “makes clear that ex parte testimonial statements are ‘reliable,’ and therefore admissible, only when the accused has an opportunity to cross-examine the declarant (see Crawford, 541 US at 59).” (People v Hardy, 4 NY3d 192, 197-198 [2005].)
Hardy overruled People v Thomas (68 NY2d 194 [1986]), which, prior to Crawford, had permitted in limited circumstances introduction of a codefendant’s plea allocution as a declaration against penal interest to prove an element of the crime against the defendant, and which had been the basis for the introduction of the plea allocution in Vasquez. As the Court in Hardy explained: “Insofar as the Roberts test allowed judges to make reliability determinations, it was ‘fundamentally at odds with the right of confrontation’ ([Crawford, 541 US] at 61) [and was] rejected.” (People v Hardy, supra, 4 NY3d at 197.)
Simply put, after Crawford, any effort to measure constitutional reliability by reference to the now discredited reliability standards of Ohio v Roberts is misplaced. For that reason, the reliance in Vasquez on that court’s extensive corroboration determinations to establish the reliability of the declaration against penal interest, as well as that court’s formulation of the accuracy inquiry as determining the rule’s effect on the reliability of the evidence in the case before it, as quoted above, are both improperly based on the old, rejected Roberts paradigm and are irrelevant.
That the reliability inquiry under Teague must evaluate the new rule in terms of its effect on the process of determining reliability, rather than with respect to individual pieces of evidence, can also be seen by contrasting the evidence at issue in Vasquez with that involved in Watson. In Vasquez, the statement was a declaration against penal interest, one of the prerequisites of which was a showing of “sufficient competent evidence independent of the declaration to assure its trustworthiness and reliability.” (Thomas, 68 NY2d 194, 197 [1986], supra.) Accordingly, the court in making its judicial assessment of the statements under Roberts found not only that the statement fell within a firmly rooted hearsay exception, but also that several pieces of evidence corroborated the facts in the statement and established its particularized guarantees of trustworthiness. (Vasquez, supra, 7 Misc 3d at 766-767.)
In Watson, however, the trial court examined a different hearsay exception, the excited utterance, and admitted it as a *957 firmly rooted hearsay exception (see People v Nieves, 67 NY2d 125, 131 n 2, 135 [1986]). In contrast to the trial judge’s evaluation of the evidence in Vasquez, therefore, satisfaction of the Roberts criteria in Watson did not require a judicial finding of particularized guarantees of trustworthiness. Furthermore, as discussed in Watson II, the New York hearsay exception for excited utterances differs markedly from the common-law hearsay exception recognized elsewhere for spontaneous declarations, virtually guaranteeing a lack of uniformity in rulings on the admission of such statements. Such inconsistency and unpredictability in the application of the Roberts general reliability tests were among the reasons that the Court in Crawford was emphatic that “simply reweighing the ‘reliability factors’ under Roberts . . . would perpetuate, not avoid, what the Sixth Amendment condemns.” (Crawford, 541 US at 67.)
Because the approach taken by the court in Vasquez to probing the accuracy requirement of Teague's second exception is mired in the inconsistencies and paradigmatic limitations of the rejected Roberts rubric, therefore, it cannot provide the basis for a determination of the retroactivity of Crawford.
Accordingly, I continue to conclude that retroactive application of Crawford on collateral review is consistent with Teague and its progeny.
4. Eastman and the Supreme Court’s Retroactivity Rules
It is clear from the conflicting opinions discussed above, however, that the application of the Supreme Court’s rules respecting retroactive application of new constitutional rules of criminal procedure in the Confrontation Clause context is currently in flux. (See transcript of oral argument, Whorton v Bockting, 547 US —, 126 S Ct 2017 [2006] [argued Nov. 1, 2006].) Whether the Supreme Court will resolve the Bockting case by determining that Crawford should apply retroactively on collateral review, or will decline to do so, either adopting the Schriro/ Teague accuracy prong reasoning of Mungo v Duncan, or ruling on another ground,[5] is unknown as of this writing.
Having explained my reasons for believing that application of Teague continues to compel the retroactive application of Crawford, this court adheres to its views expressed in Watson II that *958 Eastman also requires that result. The Eastman court unquestionably applied Teague in determining that “the retroactive application of Cruz is constitutionally commanded on collateral review of a conviction” (People v Eastman, 85 NY2d at 276).
I question, however, any suggestion that should the Supreme Court deny the retroactivity of Crawford in Bockting, the New York Court of Appeals must necessarily abandon its own retroactivity jurisprudence under Eastman and follow suit. The retroactivity rules announced by the Supreme Court are not constitutionally based; they are judicially created rules, not constitutional commands. (Linkletter v Walker, 381 US 618, 629 [1965] [“we believe that the Constitution neither prohibits nor requires retrospective effect. As Justice Cardozo said, ‘We think the Federal Constitution has no voice upon the subject’ ” (citation omitted)].)
Thus, should the Supreme Court ultimately deny retroactive application of Crawford on federal habeas corpus review of state court cases which were final on direct review at the time that decision was issued, the New York Court of Appeals would remain free to determine that its own precedents and its own procedural rules on retroactivity compel it to afford greater relief to criminal defendants in state collateral review proceedings and apply the decision retroactively on postconviction review. This result would be plausible, given the New York Court’s emphasis in Eastman on the lack of fundamental fairness in the trial where “there was no opportunity for cross-examination to test the reliability of the codefendant’s confession.” (People v Eastman, supra, 85 NY2d at 276 [citation omitted].)[6]
B. Confrontation Clause Analysis
Having again concluded that Crawford (and Davis) should be applied retroactively to New York State criminal convictions on collateral review, I will now consider defendant’s arguments on their merits.
1. The Application of Crawford in Watson II
In Watson II, this court had to determine whether defendant’s three statements were testimonial in nature without any clear *959 test having been articulated for that purpose by the Supreme Court in Crawford. After reviewing the various formulations offered by the Court, I concluded that “a testimonial statement is a formal statement which the declarant would reasonably expect to be used in future judicial proceedings.” (‘Watson II, 5 Misc 3d 1013[A], 2004 NY Slip Op 51364[U], *11.)
Applying this test, I found that the first statement was not testimonial. I noted particularly that it was not a formal statement, was not made in response to police questioning, and was a spontaneous statement made immediately following a robbery, and not one which the declarant would reasonably have expected to be used in a future judicial proceeding. (Watson II.)
As to the second statement, I found that it, too, was not testimonial. Factors I considered included the fact that the statement was made in response to a single question from the police (“Was there anybody else involved?”) immediately after the police had been summoned to the scene of an armed robbery in progress, and that it was more likely to have been intended by both Loydgren and Alexander to facilitate the securing of the crime scene than to provide evidence for a future judicial proceeding. (Watson II.)
On examining the third statement, I concluded that it was testimonial. I found that a reasonable person in Alexander’s position would have been aware that the structured inquiry was designed to aid the police in their investigation and prosecution, and that the officers, similarly, had concluded the securing of the scene and were turning their attention to collecting evidence. (Watson II.)
2. Application of Davis
a. First Statement
In Davis, the Supreme Court announced the primary purpose test to further define whether statements made in the course of police interrogation are testimonial. Where such statements are made under circumstances objectively indicating that the primary purpose of the questioning is to enable the police to meet an ongoing emergency, the Court said, the statement will be deemed nontestimonial. (Davis, supra, 547 US at —, 126 S Ct at 2273.) Where the primary purpose as objectively shown is to prove past events, the statement will be considered testimonial. (547 US at —, 126 S Ct at 2273-2274.)
The first statement at issue is Blair Alexander’s initial statement made to the police. He emerged shaken and bleeding from *960 the restaurant and. said that defendant had just robbed him in the Burger King. Alexander made this statement to the officer spontaneously, immediately after the crime had occurred, and without any prompting by the officer. Defendant Watson had just been placed in handcuffs at the time.
Applying the primary purpose test, it is obvious that the sole purpose for Alexander’s first statement to the officers immediately after experiencing the gunpoint robbery was to alert the police to what had just occurred and insure their awareness of defendant’s involvement in the crime. Alexander was bleeding and frantic. The communication was assuredly made to enable the police to address the ongoing emergency, identify the perpetrator and secure protection from any further harm. The speaker was not acting as a witness; he was seeking assistance. (Davis v Washington, supra, 547 US at —, 126 S Ct at 2277.) Accordingly, applying Davis, I find that Alexander’s first statement was not testimonial.
Defendant’s argument that this court improperly exempted Alexander’s first statement from the reach of Crawford in Watson II on the ground that excited utterances are not subject to Crawford is baseless. (Defendant’s mem of law in support of motion to vacate conviction at 2.) Alexander’s first statement is outside Crawford’s purview not because it was an excited utterance, but due to the circumstances under which it was made. (See People v Nieves-Andino, 30 AD3d 1137, 1138 [1st Dept 2006], lv granted 7 NY3d 850 [2006]; People v Diaz, 21 AD3d 58, 66 [1st Dept 2005], lv granted 5 NY3d 852 [2005] [both holding that “particular nature of any police inquiry is a critical factor” in determining whether excited utterance is testimonial under Crawford,].) This court expressly acknowledged that “no automatic exemption from Crawford analysis exists for statements admitted under the excited utterance exception” (Watson II, 5 Misc 3d 1013[A], 2004 NY Slip Op 51364[U], *14).
b. Second Statement
In a very recent case, the New York Court of Appeals had occasion to apply the Davis primary purpose test to circumstances more closely paralleling those at issue here than were present in either Davis or Hammon. In People v Bradley (8 NY3d 124 [2006]), a police officer had responded to the scene of a domestic dispute where he was met by an emotionally upset woman who was smeared with blood. He asked her what had happened, and she told him that her boyfriend had thrown her through a glass door.
*961 In Bradley, the Court found the fact situation to be neither as exigent as that in Davis, nor as calm and formal as that in Hammon. Nonetheless, applying the primary purpose test, the Court held the statement not testimonial, as it was made in response to the officer’s inquiry designed to secure the woman’s safety during an apparent emergency and to prevent any further injuries. (Id.) The Court rejected the argument that the fact that the officer’s question had been phrased in the past tense transformed the inquiry into a formal evidence-seeking foray for purposes of trial. (Id.)
In the present case, Alexander’s second statement, made in response to the first question asked by the officer, revealed that defendant had acted alone and not with anyone else. Objectively viewed, this statement, although made in response to a question, was, like the first, provided before the crime scene was fully secured for the purpose of resolving the emergency situation, and, similarly, was not testimonial.
Defendant argues that there was no emergency because he was handcuffed and lying on the ground at the time the statements were made. Loydgren had just happened on the scene, had seen defendant with a gun, and had heard Alexander’s excited statement identifying defendant as the robber. The officer’s question was asked not with a view to establishing facts relevant to later criminal prosecution, but to apprehend and disarm any other armed individual, and Alexander’s response was offered to help the police officer further secure the area. The focus of both the officer’s question and Alexander’s statement was on resolving the emergency, not on a future trial. The statement was, therefore, nontestimonial and admissible under the Confrontation Clause. (See Davis v Washington, supra, 547 US at —, 126 S Ct at 2274.)
c. Third Statement
The third statement made by Alexander, unlike the previous two, occurred after the area had been secured and after the emergency had calmed. Loydgren had the defendant in custody and was no longer on a search for an additional suspect. The type of structured police questioning that occurred was similar to that in Hammon. While the inquiry involved on-the-scene questioning, it was of a more formal nature (People v Diaz, supra), and was primarily directed at gathering evidence. (Davis, supra.) Under the circumstances, Alexander’s response, describing the crime in detail, was clearly offered for the purpose of aiding the police in compiling evidence for use in a prosecu *962 tion. It was testimonial in nature, and its admission at trial without the opportunity for cross-examination violated defendant’s Sixth Amendment right of confrontation.
Thus, applying Davis, this court reaches the same result it did in its earlier decision.
3. Harmless Error Analysis
Confrontation Clause errors are subject to a constitutional harmless error analysis. (People v Hardy, supra, 4 NY3d at 198; People v Eastman, supra, 85 NY2d at 276; People v Kimes, 37 AD3d 1, 29 [1st Dept 2006], citing Delaware v Van Arsdall, 475 US 673, 681-683 [1986].) Error requires reversal unless the impact of the error was “harmless beyond a reasonable doubt.” (People v Hardy, supra, 4 NY3d at 198; People v Eastman, supra, 85 NY2d at 276.) The court must review the entire record, evaluating the strength of the case without the erroneously admitted evidence and the causal effect that the error may have had on the jury’s verdict. (People v Crimmins, 36 NY2d 230, 240 [1975].) Reversal is required if there is any “reasonable possibility that the erroneously admitted evidence contributed to the conviction.” (People v Hamlin, 71 NY2d 750, 756 [1988].)
For the reasons stated in Watson II, this court finds that the Crawford error was harmless beyond a reasonable doubt. The evidence against defendant was overwhelming: he was found at the scene of the crime, within seconds of its conclusion, with a gun in his hand and the proceeds of the robbery on his person. He expressed surprise at having been caught so quickly, and was immediately identified as the robber by two of the victims. Thus, even had the third statement been excised from the record, there was overwhelming proof of defendant’s guilt. There is no reasonable possibility that the error might have contributed to the conviction.
V. Conclusion
For all of the reasons stated, defendant’s CPL 440.10 (1) (h) motion to vacate the judgment of conviction is denied.

. The case had been tried before another justice who no longer presides in the Criminal Term of the Supreme Court in New York County.

. Although the majority opinion in Crawford did not clearly state that the decision had overruled Roberts as to the constitutional demands of the Confrontation Clause, and some courts questioned that notion (see, e.g., United States v Saget, 377 F3d 223, 228 [2d Cir 2004]; but see Crawford, 541 US at 69, 75 [Rehnquist, Ch. J., concurring in judgment]), in Watson 11 this court concluded that Roberts had now been overruled (Watson II, 5 Misc 3d 1013[A], 2004 NY Slip Op 51364[U], *10 n 8). The New York Court of Appeals reached the same conclusion in People v Goldstein (6 NY3d 119, 127 [2005]), and the Supreme Court has now acknowledged as much (Davis v Washington, supra, 547 US at — n 4, 126 S Ct at 2275 n 4).

. Only the third of this court’s findings in Watson II on retroactivity is challenged on this motion, and that only in terms of item (3) (C), pertaining to Crawford’s role in assuring the accuracy of criminal convictions. Notwithstanding the People’s citation of Brown v Uphoff (supra), with which I disagreed in Watson II, no argument is made here that Crawford is not a watershed rule because it is subject to harmless error analysis.

. See Teague v Lane, supra, 489 US at 311-312.

. E.g., the State of Nevada and some of its amici in that case have argued that Congress implicitly eliminated the Supreme Court’s retroactivity jurisprudence entirely, including the Teague rules, in its enactment of the Anti-Terrorism and Effective Death Penalty Act of 1996 (28 USC § 2254 [d]). (See Bockting transcript.)

. Affording retroactive application to Crawford would not likely result in opening the floodgates to litigants whose cases would have to be retried. In addition to the screening out of statements which were not testimonial, were not offered for their truth, or as to which there had been a prior opportunity for cross-examination, any errors would be subject to harmless error analysis, as are all Confrontation Clause claims. (People v Hardy, supra; People v Eastman, supra.)