*114 OPINION OF THE COURT
Stein, J.
The question before us is whether the admission of a non-testifying codefendant’s redacted statement to police violated defendant’s rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. Because the statement was facially incriminating, its admission was error under Bruton v United States (391 US 123 [1968]) and its progeny. Inasmuch as that error was not harmless under the circumstances of this case, we conclude that reversal is required.
I.
The charges against defendant arose out of a large-scale fight between two rival gangs, the Trinitarios and the Latin Kings. The victim, Ariel Pena Rodriguez, was stabbed and killed during the fight. Defendant was thereafter charged in an indictment — along with six codefendants allegedly associated with the Latin Kings — with murder in the second degree, gang assault in the first degree, assault in the first degree and four counts of criminal possession of a weapon in the fourth degree.
Prior to the incident, the victim and his friends, including “Witness 1,” were riding the subway when Witness 1 — a former Latin King who had joined the Trinitarios — saw codefendant Jason Villanueva staring at him from an adjoining subway car. Witness 1 later observed Villanueva stroking his face and laughing at him, which Witness 1 interpreted as a reference to a prior incident in which Villanueva allegedly slashed his face while defendant hit him with a cane. When the train reached a station, the victim saw Trinitario gang members on the platform and stepped out to greet a friend. Someone from the group of Trinitarios then threw a bottle into the subway car where defendant and other members of the Latin Kings were located. The Latin Kings rushed the Trinitarios and the victim stepped in front of Witness 1, at which point defendant, Villan-ueva and codefendant Ariel Casares — who each had knives— stabbed and beat the victim, while two other codefendants punched and kicked him.
*115 Police present at the station when the fight began prevented anyone from leaving and requested backup. Additional officers arrived on the platform shortly thereafter, while the fighting continued. The officers separated the combatants, restored order among the approximately 100 people involved, obtained aid for the victim, and conducted identification procedures. Approximately 40 minutes after the fight began, police had potential witnesses identify the perpetrators. Numerous witnesses identified multiple offenders to different officers. Witness 1 and “Witness 2” identified defendant as one of the victim’s attackers at the scene. The suspects and witnesses were then taken to the precinct, where police spent four hours confirming the identifications made at the scene. The victim was transported to the hospital, where he died.
After an extensive Wade/Huntley hearing, Supreme Court denied defendant’s motion to suppress the identifications of him, rejecting his arguments that the identifications at the scene were suggestive and that the “confirmatory” identifications made later at the precinct were tainted by the first identification at the scene. Defendant also moved to sever his trial from that of Villanueva in light of the People’s notice of their intention to admit a statement by Villanueva that described defendant as “one of the Latin Kings wearing red [and] white trunks,” and claimed that defendant “pulled out a knife and rushed the whole crowd” and then “ran over to the victim and started punching him with a small knife.” Supreme Court also denied that motion, as well as defendant’s request to redact Villanueva’s description of the assailants who stabbed the victim as being Latin Kings. The court did, however, direct the People to remove the description of defendant’s clothing from Villanueva’s statement.
Defendant was tried jointly with codefendants Villanueva, Casares and Christian Tineo.[1] Three eyewitnesses identified defendant as having stabbed the victim; Witness 1 and Witness 2 testified that they knew defendant as “Bambino” before the attack, from school and gang activities. Villanueva’s redacted statement was also admitted, with jury instructions that no *116 deleted or redacted information could be considered. When a detective testified that defendant’s girlfriend at the time of the fight told him that defendant was nicknamed “Bambino,” the court sustained an objection by defense counsel. However, arguing that the objection could not be cured, counsel moved for a mistrial on the grounds that the testimony about the nickname was inadmissible hearsay that corroborated the testimony of Witness 1 and Witness 2. The court denied the motion and counsel declined the court’s offer to give a curative instruction.
Defendant was convicted of first-degree gang assault and fourth-degree weapons possession, and was acquitted of second-degree murder and the lesser included manslaughter charge. The People dismissed three counts on which the jury deadlocked — first-degree assault and two fourth-degree weapons possession charges. Defendant was sentenced to an aggregate term of 16 years in prison, to be followed by five years of postrelease supervision.
Upon defendant’s appeal, the Appellate Division unanimously affirmed (113 AD3d 695 [2d Dept 2014]). The Court rejected defendant’s assertion that the admission of Villanueva’s redacted statement violated Bruton “because the subject redaction would not have caused the jurors to ‘realize that the confession refers specifically to the defendant’ ” (id. at 697, quoting Gray v Maryland, 523 US 185, 193 [1998]). The Court also concluded that admission of the statement of defendant’s former girlfriend to the detective constituted hearsay but that the error was harmless (see 113 AD3d at 697). Regarding defendant’s objection to admission of the pretrial identifications of him, the Court determined that the identifications both at the scene of the crime and at the precinct were reasonable under the circumstances and were not unduly suggestive (see id. at 696).
A Judge of this Court granted defendant leave to appeal (24 NY3d 959 [2014]).
II.
Defendant argues that the admission of Villanueva s redacted statement violated his rights under the Confrontation Clause, as discussed in Bruton. As this Court has previously explained, the Confrontation Clause “prohibits the use of ‘testimonial’ hearsay against a defendant in a criminal case, even if the hearsay is reliable, unless the defendant has a chance to cross-examine the out-of-court declarant” (People v Goldstein, 6 NY3d *117 119, 127 [2005], cert denied 547 US 1159 [2006]). Introduction of a codefendant’s testimony at a joint trial generally does not violate the Confrontation Clause because the codefendant “is not considered to be a witness ‘against’ a defendant if the jury is instructed to consider that testimony only against [the] co-defendant” (Richardson v Marsh, 481 US 200, 206 [1987]). However, the Supreme Court has recognized a narrow exception to the general rule concerning a codefendant’s confession that implicates the defendant, holding “that a defendant is deprived of his [or her] Sixth Amendment right of confrontation when the facially incriminating confession of a nontestify-ing codefendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the codefendant” (id. at 207; see Bruton, 391 US at 135-136).
The exception, or Bruton rule, is necessary because:
“[T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. Such a context is presented . . . where the powerfully incriminating extrajudicial statements of a co-defendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial” (Bruton, 391 US at 135-136 [citations omitted]).
In other words, the Bruton rule provides “that certain ‘powerfully incriminating extrajudicial statements of a codefendant’— those naming another defendant — considered as a class, are so prejudicial that limiting instructions cannot work” (Gray, 523 US at 192).
Richardson distinguished Bruton, thereby further restricting the already narrow exception, for cases involving confessions that are “not incriminating on [their] face, and bee [o] me so only when linked with evidence introduced later at trial” (Richardson, 481 US at 208; see United States v Lung Fong Chen, 393 F3d 139, 148 [2d Cir 2004]; see also Gray, 523 US at 195 [“We concede that Richardson placed outside the scope of Bru-ton’s rule those statements that incriminate inferentially”]). The Supreme Court reasoned that, “[w]here the necessity of such linkage is involved, it is a less valid generalization that the jury will not likely obey the instruction to disregard the evidence” (Richardson, 481 US at 208). Thus, the Court held *118 “that the Confrontation Clause is not violated by the admission of a nontestifying codefendant’s confession with a proper limiting instruction when . . . the confession is redacted to eliminate not only the defendant’s name, but any reference to his or her existence” (id. at 211).
In Richardson, the Court left open the question of the admissibility of confessions “in which the defendant’s name has been replaced with a symbol or neutral pronoun” (id. at 211 n 5). The Court ultimately answered that question in Gray, concluding that “Richardson . . . depend [s] in significant part upon the kind of, not the simple fact of, inference,” and upheld as permissible those “statements that did not refer directly to the defendant himself [or herself] and which became incriminating ‘only when linked with evidence introduced later at trial’ ” (Gray, 523 US at 196, quoting Richardson, 481 US at 208). In that regard, “Bruton and its progeny ... do not construe the Confrontation Clause to demand further that a confession be redacted so as to permit no incriminating inference against the non-declarant defendant” (United States v Jass, 569 F3d 47, 60 [2d Cir 2009], certs denied 558 US 1159 [2010], 559 US 1087 [2010] [emphasis added]). Rather, the Bruton rule applies to “statements that, despite redaction, obviously refer directly to someone, often obviously the defendant, and which involve inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial” (Gray, 523 US at 196 [emphasis added]).
As the Second Circuit stated in Jass, further elucidating Gray, “[t]he critical inquiry is . . . whether [a] neutral allusion [to a confederate] sufficiently conceals the fact of explicit identification [of the defendant] to eliminate the overwhelming probability that a jury hearing the confession at a joint trial will not be able to follow an appropriate limiting instruction” (Jass, 569 F3d at 61). Redactions of a statement “in which the non-declarant defendant’s name [is] replaced with ‘a blank space or the word “deleted” ’ . . . [are] inadequate to avoid Bruton’s Confrontation Clause concern” (id. at 57, quoting Gray, 523 US at 188), because such a redaction is “more likely to emphasize than to conceal the fact that the declarant had specifically inculpated someone” (Jass, 569 F3d at 59 [emphasis added]). In contrast to “replacing a defendant’s name with an obvious blank or ‘deleted’ reference,” which is “insufficient to avoid Bruton error, the Supreme Court indicated [in Gray] that substituting neutral words might well pass constitutional *119 muster” (id. at 57) in the absence of an indication that “th[e] confession referred] directly to the ‘existence’ of the noncon-fessing defendant” (Gray, 523 US at 192).[2] Thus, the Second Circuit articulated that a two-step inquiry is appropriate in determining whether “particular redactions and substitutions . . . [are] sufficient to avoid the constitutional error identified in Bruton” (Jass, 569 F3d at 61). First, a court must examine whether a redacted statement inculpates a specific person— such as when a statement bears “ ‘obvious indications of alteration’ ” — and, second, whether that statement “even if ‘the very first item introduced at trial’ would ‘immediately’ inculpate [the defendant] in the charged crime” (id. at 61-62, quoting Gray, 523 US at 192, 196).
This Court’s decision in People v Wheeler (62 NY2d 867 [1984]) is entirely consistent with Jass; indeed, Wheeler anticipated both Gray and Richardson. In Wheeler, we recognized — as did the Supreme Court in Richardson — that, if a codefendant’s “confession . . . can be effectively redacted so that the jury would not interpret its admissions as incriminating the nonconfessing defendant, it may be utilized at the joint trial” (Wheeler, 62 NY2d at 869). Further, as in Gray, we held that merely replacing a defendant’s name with the word “deletion” is not an effective redaction that would render admissible a codefendant’s statement implicating a defendant (see id. at 869). Although there was evidence in Wheeler that a third individual participated in the crime and the jury might have “viewed [the] references in the confession as concerning this additional participant,” we deemed that possibility “insufficient to eliminate the prejudice to [the] defendant from the use of [the] statement upon his trial” (id.). Adopting reasoning nearly identical to that in Gray, we explained: “Given that the two [defendants] were being tried for the crime together, we believe *120 the confession could only be read by the jury as inculpating [the] defendant” (id.). In other words, we concluded that the redacted statement was inadmissible, first, because it contained obvious indications that it was altered to protect the identity of a specific person and, second, because it would be immediately apparent that the statement, standing alone, implicated the defendant (compare Jass, 569 F3d at 61-63).
Applying those principles here, we conclude that “the admission [of Villanueva’s statement] created an intolerable risk that the jury would not, or could not, follow an instruction to consider [the] redacted [statement] only against him, and not against [defendant]” (id. at 61). We acknowledge that Villanue-va’s statement, as read out loud at trial, did not appear to have been obviously redacted. When read out loud, the statement simply referred to a generic “Latin King,” of which there were many involved in the fight. However, the manner in which the physical, written statement itself — which was provided to the jury — was redacted made it obvious that Villanueva expressly implicated a specific Latin King. The identifying description of defendant was simply replaced with a large blank space, and the statement further indicated that “[t]he victim was bleeding the same Latin King [large blank space] ran over to the victim and starting punching him with a small knife.” The statement therefore ran afoul of the core concern underlying the Bruton rule — “[f]rom Bruton to Richardson to Gray, the Supreme Court’s Confrontation Clause concern has been with juries learning that a declarant defendant specifically identified a co-defendant as an accomplice in the charged crime” (id. at 60). Given that defendant was one of three codefendants sitting at the table with Villanueva, the statement powerfully implicated him.
Stated differently, the written statement was not “effectively redacted so that the jury would not interpret its admissions as incriminating the nonconfessing defendant [s]” (Wheeler, 62 NY2d at 869). Rather, the statement, with large, “blank [spaces] prominent on its face, . . . ‘facially incriminat[ed]’ ” a codefendant because it “involve [d] inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial” (Gray, 523 US at 196, quoting Richardson, 481 US at 209). Any juror “wonder-ting] to whom the blank might refer need[ed] only lift his [or her] eyes to [Villanueva’s codefendants], sitting at counsel table, to find what [would] seem the obvious answer” (Gray, *121 523 US at 193). In our view, the replacement of the identifying descriptors of defendant with blank spaces did not leave “the slightest doubt as to whose name[ ] had been blacked out, but even if there had been, that blacking out itself would have not only laid the doubt, but underscored the answer” (id. at 193-194 [internal quotation marks and citation omitted]), particularly after the court instructed the jury that it was not to speculate about the redactions in any way. The redacted statement both “indicat[ed] to the jury that the original statement contained actual names” or clearly identifying descriptors and, “even if the very first item introduced at trial [,] [it] would immediately inculpate [a codefendant] in the charged crime” (Jass, 569 F3d at 61 [internal quotation marks and citations omitted]; see Gray, 523 US at 196; Wheeler, 62 NY2d at 869). Therefore, we conclude that its admission violated the Bruton rule.
III.
Nor can it be said that the error was harmless. The evidence against defendant was not overwhelming. Three eyewitnesses identified defendant, but the testimony of Witness 1 and Witness 2 was undermined by their admitted bias. Specifically, Witness 1 testified that he hated the Latin Kings and wanted revenge on them for the prior incident in which his face was slashed, and Witness 2 admitted that he was testifying against defendant in exchange for a favorable letter to the Parole Board. The third eyewitness did not know defendant before the incident and did not identify him until trial — she identified two other codefendants at the scene but then became frightened and neither identified anyone else nor participated in the identifications at the precinct. In addition to the foregoing factors, the nature of the attack itself — a confusing melee involving dangerous circumstances during which multiple fights were occurring at once — left the eyewitness testimony open to challenge.
Moreover, under our state rule regarding harmless error, even if “there was overwhelming proof of the defendant’s guilt, [the] inquiry does not end there . . . [, but further inquiry must ... be made by the appellate court as to whether, notwithstanding the overwhelming proof of the defendant’s guilt, the error infected or tainted the verdict” (People v Crimmins, 36 NY2d 230, 242 [1975]), i.e., whether there is a reasonable possibility, in instances of constitutional error, such as *122 that at issue here, that the error affected the verdict (see id. at 241). There was a strong likelihood here that the jury considered Villanueva’s statement as implicating defendant, thereby tainting the verdict. First, while the trial court did instruct the jury not to consider the redactions in the statement at all, the court failed to give the critical limiting instruction that the jury should not consider the statement itself against anyone but Villanueva (see Richardson, 481 US at 206 [admission of a codefendant’s testimony at a joint trial does not violate the Confrontation Clause because the codefendant “is not considered to be a witness ‘against’ a defendant if the jury is instructed to consider that testimony only against (the) co-defendant” (emphasis added)]). “[T]he law assumes that even a redacted statement will prejudice a defendant if it is considered against him” (Jass, 569 F3d at 60-61). Absent a proper limiting instruction, and given both the statement’s identification of two individuals as the stabbers and the testimony at trial that defendant and Casares were the stabbers, it cannot be said that “there is no reasonable possibility that the erroneously admitted [statement] contributed to the conviction” (People v Hamlin, 71 NY2d 750, 756 [1988]).
The erroneous admission of the statement must also be considered in conjunction with the improper hearsay testimony that defendant’s girlfriend referred to defendant as “Bambino.” As previously noted, the eyewitness identifications of Witness 1 and Witness 2 were open to challenge based upon their evident biases. However, their testimony indicating that defendant— who they knew as “Bambino” — was one of the stabbers was bolstered by the detective’s testimony that defendant’s own girlfriend also called him “Bambino.” Notwithstanding that the trial court sustained an objection to the detective’s testimony, the confirmation that defendant was, in fact, “Bambino” undermined his attempts to call the credibility of Witness 1 and Witness 2 into question. Additionally, although not alone determinative, we note that the jury here struggled with the verdict, requiring the court to provide an Allen charge. The jury not only acquitted defendant of second-degree murder and the lesser included charge of first-degree manslaughter, but failed to reach a verdict on three other counts against defendant. Under the circumstances, we reject the People’s argument that the error in the admission of Villanueva’s statement was “harmless beyond a reasonable doubt” (Hamlin, 71 NY2d at 756; see Wheeler, 62 NY2d at 869-870).
*123 IV.
Finally, defendant’s challenge to the denial of his motion to suppress the identification testimony — to the extent that it was preserved[3] — presents a mixed question of law and fact (see People v Howard, 22 NY3d 388, 403 [2013]; People v Gilford, 16 NY3d 864, 868 [2011]). “The due-process inquiry for show-ups calls upon the suppression court to decide whether the showup was reasonable under the circumstances — i.e., justified by exigency or temporal and spatial proximity — and, if so, whether the showup as conducted was unduly suggestive” (Gilford, 16 NY3d at 868). Inasmuch as “it simply cannot be said that no record support exists for [the] determination that this showup was reasonable and not unduly suggestive” (Howard, 22 NY3d at 403 [emphasis added]), this mixed question is beyond our further review.
As a result of our decision, we need not address defendant’s remaining contentions. The order of the Appellate Division should be reversed and a new trial ordered.

. Casares was found guilty of first-degree manslaughter, as a lesser included offense of murder, as well as first-degree gang assault, first-degree assault and fourth-degree criminal possession of a weapon, and was sentenced to 18 years in prison. Villanueva was found guilty of first-degree gang assault and was sentenced to 16 years in prison. Tineo was acquitted of all charges.

. Similarly to the Second Circuit, we emphasize that “the substitution of neutral pronouns for redacted names” does not invariably resolve Bruton concerns (United States v Jass, 569 F3d 47, 56 n 5 [2d Cir 2009], certs denied 558 US 1159 [2010], 559 US 1087 [2010]). Such “substitution[s] of a neutral word for a defendant’s name” are permissible only if made “in a way that resemblef ] a statement that a declarant might actually have made if he [or she] had been trying to avoid specifically identifying a confederate” (id. at 59). In Jass, “[t]he redaction of [defendant’s] name from [codefendant’s] confession and the substitution of neutral words such as ‘another person’ ” was upheld because — unlike the redacted statement at issue here — the redaction “effectively concealed from the jury the fact that [codefendant] had ‘refer[red] directly to someone’ ” (id., quoting Gray v Maryland, 523 US 185, 196 [1998]).

. Defendant did not argue before the trial court, as he does here, that precinct showups are inherently suggestive.