This opinion is uncorrected and subject to revision before
publication in the New York Reports.
--------------------------------------------------------------------

No. 38
The People &c.,
             Respondent,
        v.
John Stone,
             Appellant.


              Lisa A. Packard, for appellant.
              Robert A. Spolzino, for respondent.


RIVERA, J.:

          Defendant John Stone principally challenges his

conviction on one count of first-degree assault based on an

- 1 -

alleged deprivation of a fair trial due to a violation of his right of confrontation. His challenge is without merit because the trial court eliminated any prejudice to defendant by striking the offending testimony from the record and instructing the jury to disregard the statements.

Defendant was tried before a jury on charges arising from an assault on his estranged wife's intimate partner. At trial, the victim testified that he was hailing a cab with defendant's estranged wife and daughter when someone came up from behind and stabbed him several times. The victim turned around, removed his jacket to fight and recognized the attacker as defendant. The victim then saw defendant run over to his wife and heard defendant say, "I told you. I told you not to have no n*gga around my daughter."

At the time of the trial, the People were unable to locate the wife to testify, and her absence was a central issue of dispute between counsel. The People informed the court that, although defendant's wife identified him to the police as the attacker shortly after the incident, she told the prosecutor before trial that she did not see defendant at the scene and did not wish to testify. When they could not find her, the People sought to have a detective testify as to law enforcement's efforts to locate the wife. Defense counsel objected, claiming that this would result in a favorable inference for the People and was extremely prejudicial to defendant because he would not

be able to cross examine her.  The court denied the People's request, concluding that the testimony would be prejudicial because the jury would likely draw the inference that the wife's testimony would be harmful to the defendant.  To avoid any adverse impact to the People's case, the court determined it would instruct the jury that the wife was "unavailable and, therefore, could not be called as a witness."

After the victim testified, the People called one of the detectives who had investigated the case and elicited the following testimony during direct examination:

Prosecutor: Did there come a time when you were actually assigned to investigate this incident?

Detective: Yes.

Prosecutor: When did that occur?

Detective: That morning.

Prosecutor: Now, upon learning this information from the Night Watch detectives, what did you do?

Detective: The first thing I did was I conducted a telephone interview of a witness, [defendant's wife].

Prosecutor: And you had a conversation with her?

Detective: I did.

Prosecutor: Now, after you had a conversation with [defendant's wife], what did you do?

Detective: I did several computer checks on the person that had been indicated as a suspect, John Stone.

Defense counsel immediately objected to the "whole implication" arising from the detective's testimony about the wife, and asked that the testimony be stricken. Outside of the jury's presence, the People agreed that the court could address the issue by striking the testimony and directing the jury not to draw any inferences from the detective's statements. Defense counsel additionally moved for a mistrial because the testimony implied that the wife had identified defendant as the assailant, without providing information about her later recantation. Counsel further argued that the detective had corroborated the testimony of the only other eyewitness, the victim, and caused the exact prejudice that the court went to "great lengths" to avoid.

The court denied the mistrial motion, but granted the request to strike. Upon the jury's return to the courtroom, the court instructed the jurors that "the testimony that the detective spoke to [the wife] is stricken. You're to disregard it. Further, the testimony about the fact of doing computer checks on a certain person is stricken and you are to disregard it."

During the final charge, the court again instructed the jury that any testimony that the court said to disregard "means exactly that. It means it is no longer evidence in the case, it's been stricken. It means you are to disregard it, meaning set it out of your mind, not consider it for any purpose at all." Later

in the charge, and in accordance with its prior ruling, the court advised the jury that the wife was "unavailable and, therefore, could not be called as a witness."

The jury acquitted defendant of attempted murder in the second degree, and convicted him of assault in the first degree. Prior to sentencing, defendant moved pursuant to CPL 330.30 (2) to set aside the verdict based on juror misconduct, claiming that after the verdict his fiancée observed an interaction on the street between the victim and a juror which suggested that they knew each other. The court denied the motion on the merits without a hearing. The court sentenced defendant to a determinate term of 22 years' imprisonment and five years' post-release supervision.

The Appellate Division affirmed, concluding that the court prevented any prejudice to defendant by striking the challenged portion of the detective's testimony and instructing the jury to disregard it, and that the court properly denied the 330.30 motion without a hearing (121 AD3d 617 [2014]). A Judge of this Court granted defendant leave to appeal (25 NY3d 1172 [2015]).

Defendant argues that the trial court erred in denying his mistrial motion because the detective's testimony violated his Confrontation Clause rights. He further argues that the trial court violated his constitutional right to a fair trial by denying his CPL 330.30 motion because he believes his motion

entitled him to a hearing on the issue. Both claims are without merit.[*]

With respect to defendant's principal argument, under both the federal and state constitutions defendant has a right to confront his accusers (US Const, Amend VI ; NY Const, Art I, § 6; Crawford v Washington, 541 US 36, 51 [2004]; People v Eastman, 85 NY2d 265, 274-75 [1995]). That right applies to testimonial statements, like the hearsay at issue here (Crawford, 541 US at 68; People v Pealer, 20 NY3d 447, 453 [2013]).  In response to the question about what the detective did after speaking to the wife, the detective stated, "I did several computer checks on the person that had been indicated as a suspect, John Stone."  A potential inference from this testimony is that the wife identified defendant as a suspect and, under this theory, defendant was deprived of his right to confront this witness.

However, it was not the only fair inference to be drawn, given that the jury knew that before detective spoke to the wife he had spoken to the Night Watch Unit about the case and the jury heard victim's testimony that he identified defendant to the police at the hospital.  Thus, the jury could have inferred that defendant was a suspect based on the victim's statements to the police prior to the detective's call to the wife.

An error impacting a constitutional right may only be

---

   [*] Based on the record, we reject the People's argument that defendant did not preserve a constitutional challenge to the admission of the detective's testimony.

considered harmless when the evidence is overwhelming and "there is no reasonable possibility that the error might have contributed to defendant's conviction and that it was thus harmless beyond a reasonable doubt" (People v Crimmins, 36 NY2d 230, 237 [1975], citing Chapman v California, 386 US 18, 24 [1967]). Here, there is no reasonable possibility that the error contributed to the guilty verdict, even in this single eyewitness case, where the victim knew defendant and had no doubt that defendant was the attacker. Moreover, at the time of the offending testimony and again during the jury charge, the court instructed the jury that it must disregard all testimony stricken and could not consider it for any purpose. A jury is assumed to follow the instructions of the court (People v Baker, 14 NY3d 266, 274 [2010]). Thus, any prejudice associated with the jury's exposure to the detective's testimony was eliminated by the trial court's curative instructions.

Defendant contends that the error here could not be cured by the court's instructions. For evidence to be of the type that cannot be overcome by curative instructions, the testimony must be "powerfully incriminating" (People v Cedeno, 27 NY3d 110, 117 [2016], quoting Gray v Maryland, 523 US 185, 192 [1998]). To determine whether the testimony was powerfully incriminating a court must consider its context, careful not to view the testimony in isolation (see Richardson v March, 481 US 200, 208 [1987]).

Here, the detective did not expressly state that the wife was a witness and that she had identified defendant as the attacker.  While the testimony supported an inference to that effect, there was another countervailing inference –- as discussed above, the detective may have identified defendant as a suspect based on information provided by the victim to the police at the hospital and passed on to the detective once he took the case, but before the detective spoke to the wife.  This inference also flowed logically from the victim's testimony that the wife was with the victim when he was attacked by defendant, particularly because the jury heard this testimony immediately before the detective testified.  As such, the jury could reasonably infer that the police knew about the wife from the victim and that his statements, relayed to the detective during the briefing from the Night Watch Unit, led the police to treat defendant as a suspect.  Given this context, the testimony was neither powerfully incriminating nor, as the defendant argues, did it alone transform the entire case from that in which the People presented a single eyewitness to a case with two eyewitnesses identifying defendant as the perpetrator.

Defendant unpersuasively argues that the testimony was powerfully incriminating because his wife was the source of the hearsay, and the jury heard the victim testify she was present during the attack.  He claims the reasoning of Bruton v United States (391 US 123 [1968]) –- that a nontestifying co-defendant's

statements that incriminate a defendant are so prejudicial that a jury cannot ignore them no matter the court's instruction -- applies to his case. We reject defendant's premise that in the eyes of the jury the spousal relationship places defendant's wife on the same footing as a co-defendant, standing "side-by-side with the defendant" at a joint trial (see Bruton, 391 US at 135-136; see also Cedeno, 27 NY3d at 117). The detective's testimony and the inferences to be drawn from it are not comparable to the incriminating statements of a codefendant. Unlike a codefendant who stands charged with a defendant, the wife was in no way implicated in defendant's crime. Also, the victim testified that he was no longer involved with the wife at the time of trial, so she had no apparent allegiance either to him or to her ex-husband defendant, and this diminished the significance of her absence. In any case, even under Bruton, a codefendant's nonfacially incriminating statement may be admitted when properly redacted to remove any reference to a defendant's name and with limiting instructions so that the jury is permitted to consider a codefendant's incriminating statement, only as to that codefendant (Cedeno, 27 NY3d at 118; Richardson, 481 US at 208 [1987]). As such, any error associated with the testimony here and any prejudice due to such error were adequately addressed by the court's curative instructions, which directed the jury not to consider the offending statement at all (see Cedeno, 27 NY3d at 118; see also Richardson, 481 US at 208).

Defendant's remaining claim that he is entitled to a hearing on his CPL 330.30 motion is without merit (<u>see</u> CPL 330.40; <u>People v Samandarov</u>, 13 NY3d 433, 437-438 [2009]). Accordingly, the Appellate Division order should be affirmed.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed.  Opinion by Judge Rivera.  Chief Judge DiFiore and Judges Stein, Fahey, Garcia and Wilson concur.

Decided May 4, 2017