People v Jones (2022 NY Slip Op 05960)

People v Jones

2022 NY Slip Op 05960

Decided on October 25, 2022

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: October 25, 2022

Before: Kapnick, J.P., Webber, Oing, González, Kennedy, JJ. 

Ind. No. 1924/16 Appeal No. 16402 Case No. 2019-3476 

[*1]The People of the State of New York, Respondent,
v
Frederick Jones, Defendant-Appellant.

Robert S. Dean, Center for Appellate Litigation, New York (Abigail Everett of counsel), for appellant.
Darcel D. Clark, District Attorney, Bronx (Rafael Curbelo of counsel), for respondent.

Judgment, Supreme Court, Bronx County (David D. Lewis, J.), rendered March 15, 2019, convicting defendant, after a jury trial, of murder in the second degree and criminal possession of a weapon in the second degree, and sentencing him, as a second felony offender, to an aggregate term of 25 years to life, unanimously affirmed.
The verdict was based on legally sufficient evidence and was not against the weight of the evidence (see People v Danielson, 9 NY3d 342, 348-349 [2007]). Juan Zorilla testified that in the early morning of May 4, 2016, he had just finished his night shift and was seated alone in his car at the intersection of Faile Street and Spofford Avenue in Bronx County. Zorilla observed two individuals approach a double-parked car with its hazard lights on. One of the individuals fired five or six shots at the male seated in the vehicle. Zorilla testified that the shooter had a thin "young, teenage mustache, not a full-grown beard," was a 26 or 27-year-old male, no more than 5-foot-11, no more than 170 lbs and his skin tone was darker than Zorilla's. At the scene, Zorilla described the shooter as a black male, 23 to 28 years old, about 5-foot-11, 168 lbs, wearing a black baseball cap, with a thin mustache. Zorilla later positively identified defendant as the shooter in a lineup procedure. However, at trial, Zorilla was unable to make an in-court identification.
Video surveillance footage shows the shooter with dark complexion, wearing a maroon jacket, a red hooded shirt with dark pants and red sneakers. After firing the shots, he is seen walking toward Faile Street, passing within five to six feet of Zorilla's car.
Testimony was elicited that defendant scanned into the Wedge, a strip club in the Hunts Point section of the Bronx and in the vicinity of the shooting, at 1:42 a.m. There was no activity on defendant's cell phone until 4:20 a.m., at which time there were 11 calls in 46 minutes. There was also no activity on defendant's cell phone between 5:06 a.m. and 6:25 a.m. The testimony elicited was that the deceased was shot at approximately 5:54 a.m.
Detectives Francis Orlando and Frank Diaz testified that a maroon jacket, a red hooded sweatshirt, and a pair of red sneakers were retrieved from the apartment defendant shared with his girlfriend, Tyese Diaz, and their child. According to the testimony of the People's forensic expert, DNA analysis of the clothing determined that defendant was one of three contributors to the DNA found on the left sneaker and the jacket and that defendant was a major contributor to the DNA found on the hoodie.
Thus, viewing the facts in a light most favorable to the People, " 'there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt' " (People v Acosta, 80 NY2d 665, 672 [1993], quoting People v Steinberg, 79 NY2d 673, 682 [1992]). In our independent review of the facts, we likewise find that [*2]the verdict was not against the weight of the evidence.
Defendant contends that Detective Orlando's testimony that defendant's arrest was "the end result" of information provided by Tyese Diaz was error and was not cured by the court's instruction to the jury to disregard the testimony.
It is undisputed that this issue is unpreserved, as defense counsel failed to object to the curative instruction or request a mistrial (see People v Roman, 111 AD3d 417, 417 [1st Dept 2013], lv denied 23 NY3d 1067 [2014]; People v King, 256 AD2d 14, 14 [1st Dept 1998], lv denied 93 NY2d 973 [1999]; People v Medley, 132 AD3d 1255, 1256 [4th Dept 2015], lv denied 26 NY3d 1110 [2016]), and we decline to reach it in the interest of justice (People v Ferguson, 137 AD3d 641 [1st Dept 2016], lv denied 28 NY3d 929 [2016]).
As an alternative holding, we find that the trial court's curative instruction obviated any possible prejudice to defendant. The court instructed the jury as follows:
"THE COURT: There was evidence, it was a question and answer yesterday about what led to the arrest of Mr. Jones, you may remember, from Detective Orlando. That testimony by Detective Orlando, and that question, just those — — that exchange, if you recall it, is now stricken from the record, and it may not be considered by you. You are to disregard it. In order to help you through this thicket, I am going to instruct you that you are now to take, as fact, that the defendant was legally arrested in this case, and that that is a fact that you were to assume has been testified to and therefore is part of this record for your consideration."
In so instructing the jury, the "trial court eliminated any prejudice to defendant by striking the offending testimony from the record and instructing the jury to disregard the statements" (People v Stone, 29 NY3d 166, 168 [2017]).
In Stone, the defendant was convicted of assault in the first degree. At trial, the victim testified that while hailing a cab with the defendant's estranged wife, and daughter, someone came up from behind and stabbed him. The victim turned around and recognized the defendant and then saw the defendant run to his wife, speak to her, and then run away. At the time of the trial, the People were unable to locate the wife in order for her to testify. The court determined that it would inform the jury that the wife was not available as a witness. Despite this ruling, the People elicited testimony from the detective that he had a conversation with the wife and that, immediately after the conversation, he conducted a computer search for the defendant. Defense counsel immediately objected and asked that the testimony be stricken from the record. Counsel also moved for a mistrial arguing that the testimony implied that the wife had identified the defendant as the perpetrator. The court denied the motion for a mistrial and instructed the jury that they were to disregard the testimony by the detective that he spoke to the wife and [*3]that he conducted a computer search for the defendant. On appeal, the defendant argued that despite the curative instruction, the testimony by the detective violated the defendant's Confrontation Clause rights.
In rejecting defendant's arguments, the Court of Appeals held that "[f]or evidence to be of the type that cannot be overcome by curative instructions, the testimony must be 'powerfully incriminating' " (Stone at 171, quoting People v Cedeno, 27 NY3d 110, 117 [2016]).
The Court stated that the detective's testimony was not "powerfully incriminating" since the detective did not expressly testify that the wife was a witness or that she had identified the defendant as the perpetrator. The Court stated further:
"at the time of the offending testimony and again during the jury charge, the court instructed the jury that it must disregard all testimony stricken and could not consider it for any purpose. A jury is assumed to follow the instructions of the court. Thus, any prejudice associated with the jury's exposure to the detective's testimony was eliminated by the trial court's curative instructions" (Stone at 171 [internal citation omitted]).
Here, the record is clear that the court sought and obtained defense counsel's input in fashioning the curative instruction. Moreover, as stated above, following the court's curative instructions, defense counsel neither objected further nor requested a mistrial. Under these circumstances, "the curative instructions must be deemed to have corrected the error to the defendant's satisfaction" (People v Heide, 84 NY2d 943, 944 [1994]).
Defendant's contention that the error here was so "powerfully incriminating" that it could not be cured by the court's instruction is belied by the record. It is undisputed that Tyese Diaz did not witness the shooting. As such, the jury could not have inferred that she was in a position to provide Detective Orlando with first-hand, nonhearsay information that incriminated defendant.
Moreover, given the overwhelming evidence of defendant's guilt
Zorilla's positive lineup identification of defendant; defendant's presence at the Wedge strip club, which was within the vicinity of the murder; data from defendant's cell phone; lack of cell phone activity during the time of the murder; the recovery of clothing from defendant's home that appeared to match the clothing worn by the shooter depicted in the video surveillance footage; and the results of the DNA analysis of the recovered clothing
" 'there is no reasonable possibility that the error might have contributed to defendant's conviction and that it was thus harmless beyond a reasonable doubt' " (Stone, 29 NY3d at 171, quoting People v Crimmins, 36 NY2d 230, 237 [1975],citing Chapman v California, 386 US 18, 24 [1967]).
Finally, we find that the court properly denied defendant's application for a missing witness charge as to Tyese Diaz. Defendant failed to show that Diaz was under the People's "control[*4]" such that she could be expected to testify in their favor (see generally People v Gonzalez, 68 NY2d 424, 428-430 [1986]; People v Abelson, 27 AD3d 301 [1st Dept 2006]).
We have considered defendant's remaining arguments and find them unavailing. THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: October 25, 2022