People v Robinson (2023 NY Slip Op 02561)

People v Robinson

2023 NY Slip Op 02561

Decided on May 11, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 11, 2023

110184
[*1]The People of the State of New York, Respondent,
v
Alphonso Robinson, Appellant.

Calendar Date:March 31, 2023

Before:Egan Jr., J.P., Clark, Pritzker, Ceresia and Fisher, JJ.

Mitchell S. Kessler, Cohoes, for appellant.
P. David Soares, District Attorney, Albany (Daniel J. Young of counsel), for respondent.

Pritzker, J.
Appeal from a judgment of the Supreme Court (Thomas A. Breslin, J.), rendered January 11, 2018 in Albany County, upon a verdict convicting defendant of the crime of aggravated criminal contempt.
In May 2017, defendant was charged by indictment with one count of aggravated criminal contempt and one count of criminal contempt in the first degree in relation to an incident that occurred in April 2017 in the City of Albany. During this incident, defendant got into an altercation with the victim and punched her in the eye. At the time, the victim had an outstanding order of protection against defendant. Prior to trial, the People filed a motion seeking a Sirois hearing given that the victim, after being subpoenaed, informed the People that she wanted nothing to do with the case and would not testify. In light of this, the People were seeking to admit a written statement given by the victim to police on the night of the incident. Defendant opposed this motion. Before jury selection, Supreme Court heard arguments as to the People's motion, after which, without conducting a hearing, the court found that the People had demonstrated by clear and convincing evidence that defendant had rendered the victim unavailable to testify at trial and that the People could admit into evidence the victim's written statement. Defendant was subsequently convicted of aggravated criminal contempt and acquitted of the count charging criminal contempt in the first degree. Defendant was then sentenced, as a second felony offender, to a prison term of 3½ to 7 years. Defendant appeals.
Defendant contends that Supreme Court deprived him of his right to confront witnesses against him by admitting the victim's hearsay statements as the People did not show by clear and convincing evidence that defendant procured her unavailability. Defendant also asserts that reversal is required as he was entitled to a hearing in this regard and that any error in admitting these statements was not harmless. "A criminal defendant has both a federal and state constitutional right to confront the witnesses against him or her" (People v Bryant, 200 AD3d 1483, 1490 [3d Dept 2021] [citation omitted], appeal dismissed 38 NY3d 1158 [2022]; see People v Smart, 23 NY3d 213, 219 [2014]). "The confrontation right is critical to the fairness of a trial because it ensures the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact" (People v Smart, 23 NY3d at 219-220 [internal quotation marks, brackets and citations omitted]; accord People v Rankin, 127 AD3d 1335, 1337 [3d Dept 2015], lv denied 26 NY3d 1149 [2016]). Given the importance of this right, prior statements of a witness are inadmissible as evidence-in-chief unless "it has been shown that the defendant procured the witness's unavailability through violence, threats or chicanery. In such situations, . . . the defendant may not assert either the constitutional [*2]right of confrontation or the evidentiary rules against the admission of hearsay in order to prevent the admission of the witness's out-of-court declarations" (People v Geraci, 85 NY2d 359, 365-366 [1995] [citations omitted]). "Whenever the People allege specific facts which demonstrate a distinct possibility that a criminal defendant has engaged in witness tampering, the court must grant a Sirois hearing to test the validity of that claim" (People v Cotto, 92 NY2d 68, 72 [1998] [internal quotation marks and citation omitted]; see Matter of Holtzman v Hellenbrand, 92 AD2d 405, 415 [2d Dept 1983]). "[A] Sirois hearing is no mere formality. The Sirois hearing plays the valuable role of sentry, admitting statements not subject to cross-examination only where the requisite link between the defendant's misconduct and the witness's silence has been established. Indeed, [the Court of Appeals] rejected a preponderance of the evidence standard as the People's burden of proof, and instead deemed 'the clear and convincing evidence standard to be the test that best recognizes the gravity of the interest at stake' " (People v Johnson, 93 NY2d 254, 258 [1999] [internal quotation marks omitted], quoting People v Geraci, 85 NY2d at 367).
Here, we do not find that the evidence before Supreme Court "so overwhelmingly established witness-tampering as to satisfy the clear and convincing standard and render a Sirois hearing superfluous" (People v Johnson, 93 NY2d at 258). The People, in an affidavit in support of their motion, set forth that the victim was refusing to testify at trial. As proof of defendant's improper influence, the People proffered jail calls purportedly made by defendant since the time of his arrest. When describing these calls in their affidavit, the People assert that, in the first call, defendant, speaking to an unknown male, stated, "[y]ou gotta talk to this b***h man," while talking about the incident. In another call, the People claim that defendant tells the same unknown male that if he talks to "her," he knows he can get the charges dropped. The People averred that, in another call, defendant informed the same unknown male that, if the victim does not show up to court, the charges will be dropped. Defendant repeatedly tells this unknown male to tell the victim not to show up. The unknown male says that he is driving to the victim's house, after which he puts a female, who the People purport to be the victim, on the phone. The two individuals have a 15-minute conversation, during which defendant tells the victim that nothing would happen to her if she doesn't testify and tells her numerous times not to go to court. Although these jail calls could "support an inference of . . . improper influence, providing the requisite link to the [victim's] eventual refusal to testify at trial[,]
. . . the evidence was subject to competing inferences" (People v Johnson, 93 NY2d at 259).
Significantly, the People averred that these jail calls were placed [*3]using defendant's assigned PIN number, but evidence was not set forth that it was, in fact, defendant who placed these calls. Indeed, Supreme Court asked defendant's trial counsel if she would stipulate that it was him speaking in these calls, but she would not do so. Defendant also pointed out to the court that there had not been any indication that the unknown male spoke to the victim. Defendant also argued that, during the conversation alleged to be with the victim, the two were laughing and that the conversation was not indicative of the reason she is not coming to court. Significantly, defendant, in the affidavit in opposition to the motion, cited to the People's own affidavit wherein they averred that the victim indicated that she had not heard from defendant or anyone related to him. Defendant also cited to the victim's history of being uncooperative, including having not cooperated with the investigation and not testifying before the grand jury, and that, during this time frame, the victim did not have contact with defendant so it was not him who influenced her not to cooperate early on in the case.[FN1] Moreover, we note that the jail calls referenced in the People's affidavit occurred approximately six months prior to trial. The People did not cite to any actions of defendant during those six months that were made to induce the victim not to testify at trial.
Given the foregoing, "defendant should have been afforded an opportunity to test the causal link between [the victim's refusal to testify at trial and the jail calls], as [defendant] requested, at a separate hearing" (People v Johnson, 93 NY2d at 258). Although the People contend that a hearing was not necessary because the jail calls "so overwhelming[ly]" establish that the victim's silence was procured by defendant's misconduct, "this conclusion . . . is not the test inasmuch as [this Court] cannot evaluate the record in its present state since no hearing was held" (id. at 259). Moreover, although a defendant may waive a hearing (see id.), that did not occur here. There is no evidence in the record that defendant agreed to forego a hearing or agreed to proceed without further inquiry. In fact, when Supreme Court ruled on the ultimate Sirois issue, rather than on whether the People had "allege[d] specific facts which demonstrate a distinct possibility that a criminal defendant has engaged in witness tampering" such that a hearing was required (People v Cotto, 92 NY2d at 72 [internal quotation marks and citation omitted]), defendant's trial counsel, the next day, prior to any opening statements, requested a hearing (see People v Johnson, 93 NY2d at 259). The court, however, refused this request, reiterating that it found that the People met their ultimate burden on their submissions. Given this, we find that Supreme Court erred by casting aside "the constitutionally guaranteed truth-testing devices of confrontation and cross-examination
. . . [and] admit[ing the written statement] without [*4]a hearing or waiver by defendant" (id.).
We now turn to whether this error was harmless. "Confrontation clause violations are subject to a constitutional harmless error analysis" (People v Hardy, 4 NY3d 192, 198 [2005] [citation omitted]). "Constitutional error is harmless only if it is harmless beyond a reasonable doubt" (People v Eastman, 85 NY2d 265, 276 [1995] [citations omitted]; see People v Crimmins, 36 NY2d 230, 237 [1975]). "In making [this] determination, [this Court] must assess the quantum and nature of the evidence against the defendant, if the error were excised, and the causal effect the error may nevertheless have had on the jury" (People v Simmons, 75 NY2d 738, 739 [1989] [citation omitted]; accord People v Baptiste, 306 AD2d 562, 567 [3d Dept 2003], lv denied 1 NY3d 594 [2004]). "Ultimately, 'however overwhelming may be the quantum and nature of other proof, the error is not harmless if there is a reasonable possibility that the error might have contributed to the conviction' " (People v Hardy, 4 NY3d at 198 [ellipses, internal quotation marks, brackets and citations omitted], quoting People v Crimmins, 36 NY2d at 240-241). Here, even assuming there was overwhelming proof of guilt, we cannot say that there is not a reasonable possibility that the admission of the victim's written statement did not contribute to the conviction. Most significantly, as Supreme Court charged the jury, the People bore the burden of proving, beyond a reasonable doubt, that defendant intentionally caused physical injury to the victim (see Penal Law § 215.52 [1]). In this regard, without the victim's written statement, the only version of the incident the jury heard from someone who was present is that of defendant who, in a jail call that was admitted into evidence, told a friend that he and the victim were "play fighting." In contradiction to this evidence though, is the 911 call, wherein the victim appears to be very upset and states she will be pressing charges. Although the victim was chasing after defendant with a knife when police arrived, the explanation for that — as well as other pertinent information about the circumstances of the incident — is only found in the improperly admitted written statement. In light of this, there was a "strong likelihood" that the improperly admitted statement contributed to the conviction (People v Cedeno, 27 NY3d 110, 122 [2016], cert denied 580 US 873 [2016]; see Matter of Delroy S., 25 NY3d 1064, 1067 [2015]). Accordingly, we cannot say that the error is harmless, thus, reversal and remittal for a new trial is required (see People v Deverow, 38 NY3d 157, 168 [2022]; People v Cedeno, 27 NY3d at 121-122; Matter of Delroy S., 25 NY3d at 1067-1068; cf. People v Wood, 163 AD3d 1485, 1488 [4th Dept 2018], lv denied 32 NY3d 1069 [2018]). In light of this determination, defendant's remaining arguments have been rendered academic.
Egan Jr., J.P., Clark, Ceresia and Fisher, JJ., concur.
ORDERED that the judgment [*5]is reversed, on the law, and matter remitted to the Supreme Court of Albany County for further proceedings not inconsistent with this Court's decision.

Footnotes

Footnote 1: It is clear from one of the jail calls that were submitted with the People's motion that the victim did not want to cooperate from the beginning. She stated that she did not want to go to the hospital the night of the incident because she knew that that would be used against defendant.